PEOPLE v. STEWART.

1. ARREST—PROBABLE CAUSE BASED ON FACTS NECESSARY TO JUSTIFY ARREST WITHOUT WARRANT.

In order to justify an officer in making an arrest without a warrant, he must have reasonable and probable cause to believe that the person arrested had committed or was committing a felony, and such belief must be based on facts; suspicion alone being insufficient.[1]

2. INTOXICATING LIQUORS—EVIDENCE OBTAINED BY UNLAWFUL ARREST INADMISSIBLE—SEARCHES AND SEIZURES.

Where defendant was unlawfully arrested without a warrant, intoxicating liquor which he had on his person when arrested, and which he threw away on his way to the jail, was illegally obtained and therefore was not competent evidence to be used against him in a prosecution for violating the prohibition law.[2]

---

[1]Arrest, 5 C. J. § 46; [2]Criminal Law, 16 C. J. § 1110.

Error to Shiawassee; Collins (Joseph H.), J.   Submitted October 15, 1925.   (Docket No. 135.)   Decided December 22, 1925.

Jay Stewart was convicted of violating the liquor law, and sentenced to imprisonment for not less than one nor more than two years in the State reformatory at Ionia.   Reversed. and defendant discharged.

*John R. Clarke,* for appellant.

*Andrew B. Dougherty,* Attorney General, and *Leon F. Miner,* Prosecuting Attorney, for the people.

CLARK, J.   Defendant was convicted of possessing intoxicating liquor.   On error he contends that he was arrested unlawfully, that the officer, without warrant, had no reasonable and probable cause to believe that a felony had been or was being committed by him, and that the motion to quash, to suppress, and for discharge,. timely made, ought not to have been overruled.

Of the arrest the officer testified:

"About a month ago I saw Mr. Stewart upon the streets of Owosso.   He came out of the National Hotel and went south on South Washington street and went down as far as number 206, if I am not mistaken. That would be in the second block in front of a little restaurant and soft drink parlor, as they call them. He was standing in the doorway.   I arrested the gentleman thinking he had some liquor on him.   A man named Walter Nimphie was also standing in this same doorway.   I think this was on the 11th day of April, 1925.   I was standing just south of the door on Washington street when he came out of the National Hotel.   We had been watching him for quite a while.

"*Q.* Were you there that night standing where you were, for the purpose of looking and watching for Mr. Stewart?

"*A.* Not any more so than any one else.

"*Q.* After he came out of the hotel what, if anything, did you do?

"*A.* It looked to me as though there was something that wasn't just right, which we often form ideas that are not correct.  *  *  *  I told Mr. Stewart he could consider himself under arrest.   He stood there a minute, then we started to the jail or the city hall.  *  *  *

"*Q.* What was your object of following him on this particular night?

"*A.* Well, sir, I followed him because I thought that he was handling liquor.

"*Q.* You thought he was handling liquor?

"*A.* Yes, sir.   He had been under our eyes for quite a while.

"*Q.* What information did you have at that particular time, at the time you started to follow him, which led you to believe that he had liquor?

"*A.* His actions.

"*Q.* Why did you allow him to proceed a distance of a block and a half before you made the arrest?

"*A.* I wanted to satisfy myself in my own mind that he had it.

"*Q.* Did you have a warrant for his arrest?

"*A.* No, sir.

"*Q.* Had any complaint been made to you in writing at that time?

"*A.* No, sir.

"*Q.* Had any complaint been given to you orally regarding his actions on this particular day and night or this night time?

"*A.* Please state that again.   (Question read.)

"*A.* Orally, what do you mean?

"*The Court:* By word of mouth, spoken to you?

"*A.* May I have the question once more?   (Question read.)

"*A.* No, sir.

"*Q.* And you didn't have any information or complaint, either written or oral, at that particular time?

"*A.* No, sir.

"*Q.* Then this idea that you had about Mr. Stewart dealing with liquor in any way at all, was purely a guess on your part, wasn't it?

"*A.* A guess.   We had had complaints coming in.

"*Q.* I am talking about this particular night.

"*A.* Yes, sir.

"*Q.* What did he do that led you to believe that he had liquor?

"*A.* He came out and walked down the street. I see another party walking down the street ahead of him.

"*Q.* How far was this party ahead of Mr. Stewart?

"*A.* Well, that would be very hard for me to give that distance.

"*Q.* That is, he was on the same side of the street?

"*A.* Yes, sir.

"*Q.* And they both were walking on the sidewalk?

"*A.* Yes, sir.

"*Q.* Would that set of facts justify you at any time, a man following another man down the street or another man preceding him, that there was liquor involved in any way?

"*A.* It looked very suspicious to me.

"*Q.* What were the grounds that you based your suspicion on as to his having liquor?

"*A.* The grounds would be that he was going down that way, and we had him under our supervision.

"*A.* We had been watching this man for quite a while and watching every move that he made.

"*Q.* There are other men that you watch, too, aren't there?

"*A.* Yes, sir.

"*Q.* Would the fact that he should come out of a place of business at 10:20 at night and follow another man down the street, raise the same presumption that one of them had liquor?

"*A.* Yes, sir. It would to me if they were watching him.

"*Q.* These words you used, I believe, on your direct-examination, I think you used these words—possibly you recall them—'it looked to me as though there was something wrong and I followed.' What I am attempting to get at, officer, what was the particular thing that looked wrong that caused you to follow him?

"*A.* Just his general actions.

"*Q.* Just his actions?

"*A.* Yes, sir, coming out of the hotel.

"*Q.* What did his actions consist of that aroused your suspicion?

"*A.* Because we had watched this man's step continuously.

"*Q.* Was he intoxicated this evening?

"*A.* Not to my knowledge, he wasn't.

"*Q.* You were near enough to place him under arrest?

"*A.* Yes, sir.

"*Q.* At the time you placed him under arrest, did you put handcuffs on him?

"*A.* No, sir.

"*Q.* How near were you to him?

"*A.* I was right up so I could touch him.

"*Q.* Did you detect the odor of liquor on his breath?

"*A.* No, sir, I did not.

"*Q.* Were you near enough so you could have done so?

"*A.* Yes, sir.   *   *   *

"*Q.* Officer, why was it that you waited the length of time that you did to arrest Mr. Stewart, if you had grounds to base a suspicion on at the time he left the National Hotel?

"*A.* I wanted to watch him to see what he was doing.

"*Q.* Did you see him do anything up to the time you made the arrest?

"*A.* No, sir."

This testimony does not show reasonable and probable cause to believe that defendant had committed or was committing a felony. It was said in *People* v. *Burt,* 51 Mich. 199:

"But no one, whether private person or officer, has any right to make an arrest without warrant in the absence of actual belief, based on actual facts creating probable cause of guilt. Suspicion without cause can never be an excuse for such action. The two must both exist, and be reasonably well founded."

That it turned out later that the officer was right in his suspicion has no bearing on the question before us. The "reasonable and probable cause to believe" must be present at the moment of arrest. *People* v.

*Kamhout,* 227 Mich. 172.   The reason and the importance of preserving the rights of persons to be secure against unlawful arrest have been considered and stressed so often by the courts that further discussion would be idle.

After arrest, on the way to the jail, defendant took from his pocket and threw away a bottle of whisky. The officer succeeded in recovering a part of the liquor and it was received in evidence over objection.   It ought not to have been received.   It was procured by means of the unlawful arrest.   Had the officer searched defendant after the arrest and taken the whisky and later offered it in evidence the situation, in principle, would not be different.   *People* v. *Margelis,* 217 Mich. 423.

Reversed and defendant discharged.

McDONALD, C. J., and BIRD, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.