[L. A. No. 23924.   In Bank.   Feb. 24, 1956.]

MONA FLOY WILLSON, Petitioner, v. SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent.

Edgar B. Hervey and James Edgar Hervey for Appellant.

James Don Keller, District Attorney (San Diego), and Luther L. Leeger, Deputy District Attorney, for Respondent.

TRAYNOR, J.—By information petitioner Mona Willson was charged with one count of occupying premises for the purpose of horse-race bookmaking and one count of recording a bet on a horse race. (Pen. Code, § 337a, subds. 2, 4.) Her motion to set aside the information on the ground that there is no reasonable or probable cause to believe she committed the offenses charged was denied (see Pen. Code, § 995), and she now seeks prohibition to prevent further proceedings against her. (See Pen. Code, § 999a.)

Petitioner contends that her commitment was based entirely on incompetent evidence and that the peremptory writ should therefore issue. (See *Rogers* v. *Superior Court, ante,* pp. 3, 6, 7 [291 P.2d 929].)

At the preliminary hearing, San Diego Chief of Police Adam Jansen testified that on May 25th or 26th, 1955, a man stopped him in the hallway of the police station. The man appeared to know Chief Jansen, but Chief Jansen did not know him and did not find out who he was or where he lived. The man told him that "there was a considerably large book making operation in progress in the Monte Carlo bar. . . . He said he had been in the place; that he had observed it, and he described what the operation was." Part of the information given concerned a waitress named Mona. The man said that she would generally be found near the telephone, that she occasionally answered it, and that she took bets from customers in the place. "He said that the girl Mona used food checks, restaurant checks. I gathered it was the customary tab that the waitress would make out when you were served food from the way he described it. She wrote the wagers on these slips, and that she had two pockets in her——he didn't say uniform, he said she had two pockets, one, I don't know which one, one contained money and the

other one contained betting slips. . . ." Chief Jansen also testified that he later secured other information indicating that bookmaking activities were going on at the Monte Carlo bar, but the record does not indicate what the source of this information was.

The substance of the information stated above was communicated to other police officers including Officer Marilyn Sunday, who, in the company of three other officers, went to the Monte Carlo bar during the afternoon of June 10th. The purpose of the visit was to secure evidence of bookmaking, and if such evidence was found, to make arrests. On entering the bar, Officer Sunday observed petitioner standing at the far end of the bar. She was wearing a belt with a metal plate that had the name "Mona" written on it. Officer Sunday testified that "She was standing facing the bar, and I approached her at that point. When I came up to [petitioner], I observed on the bar a telephone, a small scratch pad and a pencil. I stated to her—I noticed first that she had something in her hand, appeared to be papers. I asked her if I may see what was in her hand. And as I said that, these papers that were in her hand, she attempted to crumple them, and extended her hand to the back and to the side of her." Officer Sunday took the papers from her hand and then searched petitioner's pockets. Three slips of paper were taken from petitioner's hand and another from her left pocket, and approximately $270 in cash was found in her other pocket. Officer Sunday then asked petitioner to come with her, and she and another officer took petitioner to the police station. The officers were not in uniform and did not identify themselves as such or inform petitioner expressly that she was being arrested, and they did not have a search warrant or a warrant for petitioner's arrest. There was evidence that the slips were registered bets on horses running in races on the day that they were seized.

Section 835 of the Penal Code provides that "An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of an officer. The defendant must not be subjected to any more restraint than is necessary for his arrest and detention." Section 841 provides that "The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or is

pursued immediately after its commission, or after an escape."
**[1]** Since petitioner was taken into custody while apparently engaged in the commission of an offense, there is evidence that the requirements of these sections were met. **[2]** Moreover, since petitioner was arrested in a public bar, but made no outcry or objection, it may be inferred that she realized that Officer Sunday was a police officer and that her purpose was to make an arrest. Under these circumstances, it is immaterial that petitioner was not expressly informed of Officer Sunday's authority and purpose. (See *People* v. *Martin,* 45 Cal.2d 755, 762-763 [290 P.2d 855], and cases cited.) ■ Furthermore, if before the search and seizure, Officer Sunday was justified in making an arrest, it is also immaterial that the search and seizure preceded rather than followed the arrest. (*People* v. *Simon,* 45 Cal.2d 645, 648-649 [290 P.2d 531].)

Defendant contends, however, that before the search and the arrest, Officer Sunday had no reasonable cause to believe she had committed or was committing a felony (Pen. Code, § 836, subd. 3) and that the search and seizure were therefore unlawful. (See *People* v. *Brown,* 45 Cal.2d 640, 642-645 [290 P.2d 528]; *People* v. *Simon, supra,* 45 Cal.2d 645, 647-648; *People* v. *Boyles,* 45 Cal.2d 652, 655 [290 P.2d 535].)

In *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535], we held that "reasonable cause to justify an arrest may consist of information obtained from others and is not limited to evidence that would be admissible at the trial on the issue of guilt." Accordingly, the question presented is whether the information given by the unidentified man to the chief of police and passed on to Officer Sunday was sufficient in the light of the other evidence to constitute reasonable cause to believe that defendant was guilty of a felony. ■ Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency (see *People* v. *Kilvington,* 104 Cal. 86, 92-93 [37 P. 799, 43 Am.St.Rep. 73]), an arrest may not be based solely on such information. (*United States* v. *Kind,* 87 F.2d 315, 316; *United States* v. *Blich,* 45 F.2d 627, 629; *United States* v. *Keown,* 19 F.Supp. 639, 646; *State* v. *Arregui,* 44 Idaho 43 [254 P. 788, 793-794, 52 A.L.R. 463]; *Hill* v. *State,* 151 Miss. 518 [118 So. 539, 540]; *Smith* v. *State,* 169 Tenn. 633 [90 S.W.2d 523, 524]), and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. (See *People*

v. *Boyles, supra,* 45 Cal.2d 652, 656 [290 P.2d 535].) In some cases the identity of, or past experience with, the informer may provide such evidence (see *Aitken* v. *White,* 93 Cal.App.2d 134, 145 [208 P.2d 788]),* and in others it may be supplied by similar information from other sources or by the personal observations of the police. In the present case the identity of the informer was unknown, the San Diego police had had no previous experience with him indicating that his information was reliable, and the source and character of the other information with respect to bookmaking at the Monte Carlo bar was not sufficiently revealed to permit its evaluation. We must consider, therefore, whether the evidence observed by Officer Sunday in the bar before the search was sufficient to justify her reliance on the information that she had received.

Petitioner was found in the bar near the telephone where the informer had stated she would generally be. Since such innocent conduct could be known, however, to anyone who frequented the bar, it is doubtful whether its verification alone would justify reasonable reliance on the additional information charging petitioner with bookmaking. In addition, however, Officer Sunday observed petitioner standing by a scratch pad and a pencil with slips of paper in her hand. Contrary to Chief Jansen's assumption, the pad was not a pad of ordinary printed checks given to customers, but was a pad of plain scratch paper, and although such a pad would be commonplace equipment in an office (see *People* v. *Sanders, ante,* p. 247 [294 P.2d 10]), it is not ordinarily part of the equipment of a bar. Moreover, when Officer Sunday asked to see what was in petitioner's hand, she attempted to conceal and dispose of it. Although petitioner's conduct observed by Officer Sunday in the bar would not of itself constitute reasonable cause to believe she was committing a felony, it was sufficient to justify Officer Sunday's reliance on the information given her of petitioner's bookmaking. Under these circumstances the evidence before the magistrate was sufficient to justify the conclusion that a violation of Penal Code, sec-

---

*Since in the present case Chief Jansen did not know the identity of the informer, no question is presented as to when, if ever, a claim of privilege not to reveal the identity of an informer may defeat the right to rely on his information in making an arrest or search. (See *Scher* v. *United States,* 305 U.S. 251, 253-254 [59 S.Ct. 174, 83 L.Ed. 151]; *United States* v. *One 1941 Oldsmobile Sedan,* 158 F.2d 818, 820; *Hill* v. *State, supra,* 151 Miss. 518 [118 So. 539, 540]; *Smith* v. *State, supra,* 169 Tenn. 633 [90 S.W.2d 523, 524].)

tion 337a, had been committed, that Officer Sunday had reasonable cause before the search and seizure to believe that petitioner was guilty thereof, and that therefore the search, seizure, and arrest were lawful. (See *Husty* v. *United States,* 282 U.S. 694, 701 [51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407]; *United States* v. *One 1941 Oldsmobile Sedan,* 158 F.2d 818, 820; *Wisniewski* v. *United States,* 47 F.2d 825, 826; *Hawthorne* v. *State,* 110 Tex.Crim. 646 [10 S.W.2d 724, 725].)

The alternative writ of prohibition is discharged and the peremptory writ is denied.

Gibson, C. J., Schauer, J., and McComb, J., concurred.

Shenk, J., and Spence, J., concurred in the judgment.

CARTER, J.—I dissent.

For the reasons stated in my dissenting opinion in *People* v. *Martin,* Crim. 5758, *ante,* p. 106 [293 P.2d 52], I am of the opinion that the search and seizure in the case at bar was unreasonable and therefore illegal and that the evidence obtained thereby was inadmissible. Since the evidence so obtained was the only evidence which tended to support the charge against petitioner, it should follow that there was no reasonable or probable cause to believe that she had committed the offenses charged in the information and a writ of prohibition should issue to prevent further proceedings against her.