[Crim. No. 6444. In Bank. June 19, 1959.]

THE PEOPLE, Appellant, v. HENRY VICTOR PREWITT,
Respondent.

Edmund G. Brown and Stanley Mosk, Attorneys General, William E. James, Assistant Attorney General, William B. McKesson, District Attorney (Los Angeles), Jere J. Sullivan, Lewis Watnick and Robert Lederman, Deputy District Attorneys, for Appellant.

Albert Jack Chotiner and Russell E. Parsons for Respondent.

A. L. Wirin and Paul P. Selvin as Amici Curiae on behalf of Respondent.

TRAYNOR, J.—The People appeal from an order granting defendant's motion to set aside an indictment charging defendant with bookmaking and with occupying an apartment for the purpose of recording bets. (Pen. Code, § 337a.) Defendant has moved to augment the record to present additional grounds for affirming the order.

The grand jury returned the indictment after hearing the following evidence: Officer Joseph Deiro testified that for the past three years he had been assigned to the Administrative Vice Division of the Los Angeles Police Department and during that time had made more than two hundred bookmaking arrests. He said that he was familiar with the various ways that bookmaking is carried on in Los Angeles.

A person wishing to make a small bet can place it with a "hand book," who is likely to be found in the vicinity of a bar or poolroom. One wishing to bet a larger sum can call an "agent," who will give him a telephone number to call.

The bettor then telephones in his bets daily and settles his account with the agent about once a week.

No bookmaker can operate without a system of safely and permanently recording the bets, winnings, and losses. Therefore most bookmakers have one or more "front offices" or "relay spots." At the front office a person answers the telephone and accepts bets placed by the "hand books" and larger bettors. He records the bets on the top of a table, a slate, or on anything that can be written on and erased or destroyed easily, since front offices are often raided by the police.

The permanent records are kept in the "back office." Just before post time of each race the back office calls the front office and accepts all bets that have been received by the front office. The bets are then recorded on professional betting cards and the cards are placed in a rack. These cards contain, in code, the name of the bettor, the horse, the amount of the bet, and the result of the race.

Some time in late January or early February of 1958, Officer Deiro received a telephone call from a person who told him that a back office operation was being carried on at 248 South Western Avenue in Apartment 401. This person did not give his name, but Officer Deiro recognized his voice as that of a person who had twice previously given him information that had proved accurate and resulted in arrests. Although Officer Deiro did not know and never had known the name of this person, he considered his source of information reliable.

On February 20, 1958, acting upon the information received from the informer, Officer Deiro and two fellow officers went to the address on South Western Avenue. Officer Deiro obtained a key to apartment 401 from the manager's office. The officers slowly unlocked the door to the apartment and opened it about two inches, at which point a night latch prevented further progress. Nothing but a bare wall could be observed through the opening. The officers then forced the latch and entered the apartment. Defendant was standing in the center of the room amid various bookmaking equipment. The officers arrested him and seized the bookmaking paraphernalia. They found a key to the apartment in defendant's pocket. Handwriting analysis indicated that defendant had prepared a number of betting cards found in a rack in the apartment.

The foregoing evidence before the grand jury was sufficient to support the indictment unless it was illegally ob-

tained. ■ "If . . . illegally obtained evidence is the sole basis of an indictment or information, defendant is held without reasonable or probable cause; his motion to set aside the accusatory pleading should be granted by the court in which he is arraigned on such pleading; and if the motion is improperly denied an appellate court will grant prohibition to halt proceedings under the accusatory pleading." (*People* v. *Valenti,* 49 Cal.2d 199, 203 [316 P.2d 633] ; see also *Badillo* v. *Superior Court,* 46 Cal.2d 269, 271 [294 P.2d 23] ; *Priestly* v. *Superior Court,* 50 Cal.2d 812, 815 [330 P.2d 39].) ■ In the Badillo case we pointed out that "No problem is presented in applying this rule in cases involving searches and seizures in which the facts bearing on the legality of the search or seizure are undisputed and establish as a matter of law that the evidence is or is not admissible. In many cases, however, the evidence before the magistrate bearing on this issue may be in conflict or susceptible of conflicting inferences or consist only of the testimony of prosecution witnesses, and under these circumstances the court in ruling on a motion to set aside the information will frequently not be in a position to make a final determination as to the admissibility of the evidence. Accordingly, the information should not be set aside on the ground that essential evidence was illegally obtained if there is any substantial evidence or applicable presumption to support a contrary conclusion [citations], and in such cases the ultimate decision on admissibility can be made at the trial on the basis of all of the evidence bearing on the issue." (46 Cal.2d at 271-272.) ■ The burden is on the defendant to raise the issue of illegally obtained evidence, and if the prosecution is by information, he must object to the introduction of the evidence before the magistrate if he seeks to have it excluded as a basis for holding him to answer. (*Robison* v. *Superior Court,* 49 Cal.2d 186, 187 [316 P.2d 1].) ■ When the prosecution is by indictment, however, the defendant has no opportunity to object to the introduction of evidence before the grand jury, and accordingly, there can be no waiver of the right to challenge the legality of the evidence to support the indictment based on a failure to object to its introduction. ■ Although he has no opportunity to develop facts that may show that essential evidence was illegally obtained, if the record is silent on this question, it must be presumed that the officers acted lawfully. (*People* v. *Farrara,* 46 Cal.2d 265, 269 [294 P.2d 21].) In such a case, just as in the case when the evidence before the magistrate is conflicting on the

question of legality or no objection is made to the evidence seized, "the ultimate decision on admissibility can be made at the trial on the basis of all of the evidence bearing on the issue." (*Badillo* v. *Superior Court, supra.*) ▮ If, however, the evidence before the grand jury establishes as a matter of law that essential evidence was illegally obtained or otherwise inadmissible, a motion to set the indictment aside should be granted. (*People* v. *Valenti, supra.*) Defendant contends that this is such a case and that the order should therefore be affirmed.

▮ There was no direct testimony before the grand jury that the officers did not have a warrant. Officer Deiro testified, however, that in making the arrest he was acting on the information received from the informer and the People do not contend that the arrest should be sustained on the ground that the existence of a warrant must be presumed. Under these circumstances the only reasonable inference that can be drawn from the record is that the arrest, search, and seizure were made without a warrant. Accordingly, the question presented is whether information from an informer who has proved reliable in the past constitutes probable cause for an arrest when the officer does not know the identity of the informer.

▮ This question is distinct from that presented in *Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39]. In that case the officer knew the identity of the informer but claimed a privilege not to disclose it. It was held that in such a case "when the prosecution seeks to show reasonable cause for a search by testimony as to communications from an informer, either the identity of the informer must be disclosed when the defendant seeks disclosure or such testimony must be struck on proper motion of the defendant." (50 Cal.2d at 819.) This rule is based on the requirement that the officer fully disclose the information on which he relies to enable the court to determine whether it constitutes reasonable cause.

▮ "A belief must or should rest upon a substantial basis. It is not a question of impugning the motives or doubting the honest belief of the agent in regard to the information which he may have received. It is simply requiring the witness to sustain his motives and his beliefs *by all the evidence at his command.*" (*United States* v. *Blich,* 45 F.2d 627, 629.) (Italics added.) ▮ If the officer does not know the name of the informer he does not suppress evidence by not stating it. He is not seeking to eat his cake and have it too; to rely on information and yet not reveal it. Since no privilege is

claimed, the evidence of the information received cannot be excluded on the ground that one is claimed. (See *Willson* v. *Superior Court,* 46 Cal.2d 291, 295, footnote [294 P.2d 36].) The question remains whether the information should nevertheless be held insufficient to constitute reasonable cause.

 Evidence of information from a reliable informer is sufficient to sustain a finding that an arrest, search, and seizure were made with reasonable cause. (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36]; *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535]; *People* v. *Dupee,* 151 Cal.App. 2d 364, 367 [311 P.2d 568]; *People* v. *Dean,* 151 Cal.App.2d 165, 167 [311 P.2d 85]; *Lorenzen* v. *Superior Court,* 150 Cal. App.2d 506, 513 [310 P.2d 180]; *Trowbridge* v. *Superior Court,* 144 Cal.App.2d 13, 18 [300 P.2d 222]; see 9 Stan. L. Rev. 515, 523-524.) "Although information provided by an anonymous informer is relevant on the issue of reasonable cause, in the absence of some pressing emergency [citation], an arrest may not be based solely on such information [citations], and evidence must be presented to the court that would justify the conclusion that reliance on the information was reasonable. [Citation.] In some cases the identity of, or past experience with, the informer may provide such evidence [citation],* and in others it may be supplied by similar information from other sources or by the personal observations of the police." (*Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36].) In the Willson case, as in this case, the informer did not identify himself to the officer, but we held that his information together with facts personally observed by the officer were sufficient to constitute reasonable cause for an arrest. Admittedly, an informer's failure or refusal to identify himself may cast doubt on the reliability of his information, but the fact that his information has proved reliable in the past is at least as persuasive of his present reliability as the corroborating suspicious circumstances observed by the officer in the Willson case; circumstances that alone were not sufficient to constitute reasonable cause. The testimony before the grand jury does not establish that essential evidence was illegally obtained, and accordingly, the trial court erred in setting aside the indictment.

 Defendant contends, however, that if reasonable cause may be established by information from an informer whose identity is unknown to the officer, the rule of the

---

*Footnote omitted.

Priestly case may be circumvented by the officer's claiming ignorance instead of privilege and the door will be opened to justify illegal arrests on the basis of fictitious information from fictitious anonymous informers. It cannot be presumed, however, that officers will commit perjury (*Lorenzen* v. *Superior Court*, 150 Cal.App.2d 506, 510 [310 P.2d 180]), and it must be presumed that trial courts will be alert to detect perjury if it does occur. (See *People* v. *Roberts*, 47 Cal.2d 374, 378 [303 P.2d 721].) ██ Moreover, since the privilege of nondisclosure must be waived if the information is to be relied upon, the officer may be cross-examined fully as to facts that might tend to identify the informer and test the officer's credibility. His testimony is not limited to general statements that on previous occasions reliable information was given, and he cannot claim a privilege that the details would tend to identify the informer. His testimony can be elicited as to all of the details of the information claimed to have been received, and the officer must relate that information to actual arrests or investigations made in claimed reliance on it. Not only would it be difficult to fabricate such details, but since they must be related to actual facts, avenues of investigation to refute them may be opened. In the present case, for example, Officer Deiro testified with respect to previous information supplied by his informer as follows:

"Some time in the latter part of 1956, approximately November or December, I received the first phone call from this person who at that time stated, he gave me a telephone number and told me that bookmaking was being conducted at that telephone number and that it was a 'back office.' . . .

"It [the telephone number] was checked out through the telephone company and it was registered at 229 North New Hampshire Avenue. An investigation was conducted after this information was received, and surveillance disclosed that two known bookmakers, whom I had arrested before, were entering this location in the morning and leaving in the evening. Our investigation was conducted for approximately two weeks at which time we made an arrest. This particular case went to trial; the individuals were held to answer, the case was dismissed on a 995 motion, and later on the District Attorney's office appealed it, and I have received a subpoena this week to testify in Superior Court in regards to this particular case."

In *People* v. *Cicchello*, 157 Cal.App.2d 158 [320 P.2d 528], the District Court of Appeal reversed an order granting a

motion to set aside an information charging bookmaking at 229 North New Hampshire. We have found no other appellate opinion filed between the latter part of 1956 and the date Officer Deiro testified in this case involving that address. From the opinion it appears that the arrests were made by Officers Evans and Deiro in February 1957, and that the investigation was undertaken on the basis of information supplied to Officer Evans who in turn passed it on to Officer Deiro. From the record in that case it appears that Officer Deiro was asked at the preliminary hearing whether "Prior to making this arrest, had you received any information from a confidential informant regarding the defendants in this case?" He answered, "Myself, personally, no, sir." When the present case goes to trial Officer Deiro may be cross-examined as to whether the arrest he testified to before the grand jury was the same arrest described in the Cicchello case, and if so, he may be asked to explain the discrepancy in his testimony on the two occasions. Of course, if he did not personally converse with the informer on the previous occasions referred to, he would have no basis for concluding that the informer in the present case was the same informer who had proved reliable in the past, for it was solely by the sound of the informer's voice that Officer Deiro identified him. These possible discrepancies were not before the grand jury, however, and Officer Deiro has had no opportunity to explain them.

Defendant moved to augment the record on appeal by adding thereto the minutes of the Municipal Court of the Los Angeles Judicial District in case Number 143900, entitled *People* v. *Henry Victor Prewitt,* and a certified copy of the complaint filed in that court on March 3, 1958, wherein defendant was accused of violating section 337a of the Penal Code. In support of the motion defendant has filed an affidavit of one of his counsel that the defendant named in the municipal court action is the defendant in the present case; that the charge contained in the indictment in the instant case is identical with the charge contained in the complaint filed in the municipal court; and that after a preliminary examination at which substantially the same evidence was presented to the magistrate as was presented to the grand jury, "said case was dismissed by reason of the fact that the evidence had been unlawfully obtained, in violation of the rules laid down in the case of *People* v. *Cahan,* 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]."

Defendant contends that the doctrines of res judi-

cata and collateral estoppel are applicable to establish that the evidence in the present case was unlawfully obtained. The dismissal of an information or indictment, however, will not bar a trial based on a subsequent accusatory pleading charging the identical offense. (Pen. Code, § 999; *Ex Parte Fenton*, 77 Cal. 183 [19 P. 267]; *People* v. *Joseph*, 153 Cal.App.2d 548 [314 P.2d 1004]; see also *In re Begerow*, 136 Cal. 293, 298-300 [68 P. 773, 56 L.R.A. 528]; *People* v. *Beltran*, 94 Cal. App.2d 197, 203-205 [210 P.2d 238].) This rule specifically applies when the previous dismissal was based on the magistrate's conclusion that the evidence was illegally obtained. (*People* v. *Joseph, supra*, 153 Cal.App.2d 548; see also *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272-273, footnote [294 P.2d 23].) There is no merit in defendant's assertion that to relitigate the question of the admissibility of the evidence denies him due process of law. (*People* v. *Ferrera*, 149 Cal.App.2d 850, 852 [309 P.2d 533].)

The motion to augment the record is denied. The order setting aside the indictment is reversed.

Gibson, C. J., Schauer, J., McComb, J., and Peters, J., concurred.

Shenk, J., and Spence, J., concurred in the judgment.