[Crim. No. 7032.    Second Dist., Div. Two.    Apr. 21, 1960.]

THE PEOPLE, Respondent, v. EMILIO MACIAS,
Appellant.

John J. Bradley and Max Solomon for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

ASHBURN, J.—Unlawful possession of marijuana (Health & Saf. Code, § 11500). Defendant convicted. Appeal from judgment and order denying motion for new trial. Appellant contends, and we believe correctly, that the evidence indispensable to a conviction was obtained by an unlawful search and seizure.

There is little conflict in the evidence concerning the controlling facts. On the evening of April 24, 1959, about 10 p. m., Police Officers Key and Craig received a radio call to go to the 1200 block on Los Palos Street to interview the victim of "a 211 robbery" i.e., one committed "by means of force or fear." There they found one Valencia, who told them he had been robbed by a male Mexican who was between the ages of 20 and 30, somewhere between 5'10" and 6' or 6'1" in height, wearing a dark suit; that he, Valencia, lived in the rear house; it was dark; that was all the description he could give and he was not sure whether he could identify the robber; that he knew the robber was a Mexican by his accent. That is the full extent of the description which the officers had.

They cruised through the vicinity until they came to a bar at 3790 Olympic Boulevard, two and one-half blocks from the scene of the crime. They had no information that the robber had gone into a bar. When they entered they saw a number of people, some of whom were Mexicans; one of them, defendant, was seated at the bar having a drink. The officers concluded he was the only one who fit the description. They did not get this from his accent for without any previous conversation Officer Key, who was in uniform, stepped up behind defendant and did not interrogate him or otherwise converse except to ask him to step outside, that they, the officers, would like to talk to him. It does not affirmatively appear that defendant is a Mexican but it may be assumed in favor of the judgment that he looked like one; he was wearing a dark blue suit and was about the age and height which had been given by Valencia to the officers.

Defendant acquiesced in the request to go outside and as soon as he and the officers arrived there they began to frisk him for a weapon. Again there was no interrogation. De-

fendant objected and said they could not search him when he had not done anything. The officers said they did have a right to search for weapons, they were looking for a robbery suspect and that if he did not allow it he would be arrested and taken to the station and searched anyway. "All right, let's go to the station." Defendant offered to go in handcuffs to the robbery victim so the latter could identify him as not being the robber. But he was immediately arrested upon suspicion of robbery, was handcuffed with his hands behind his back, the checking for weapons was completed without results, and he was placed in a police car which proceeded to Hollenbeck Police Station. According to Officer Key his fellow officer asked defendant on the way what he had in his pockets that he did not want them to find and he replied that he had four marijuana cigarettes he had purchased from some character in the bar. Defendant's own testimony, uncontradicted, is a bit more illuminating: "Well, one of the officers kept asking me, 'Why are you so concerned about our searching you?' 'What are you afraid of,' at which time he sort of put his hands into my pocket, my coat pocket, and said, 'marijuana,' and I said, 'Yes.' Q. In other words, he reached in your pocket and got ahold of—— A. Yes, he did. He said, 'marijuana,' and I said, 'Yes, I have four cigarettes.' " The cigarettes were in a Chesterfield package; the officer took the package in his hand, looked inside it and placed it back in defendant's pocket. True to promise defendant was searched upon arrival at the station and the four marijuana cigarettes were taken from him. He was not booked for robbery but for possession of the narcotic.

The officers did not have sufficient description of the robber to warrant their searching appellant. As above pointed out they did not interrogate him. The description of a Mexican between the ages of 20 and 30, somewhere from 5'10" to 6'1" in height, and wearing a dark suit, furnished nothing distinctive nor would those elements do so when combined. Especially in that area in Los Angeles hundreds of Mexicans would doubtless fit that description. That bar, so far as appears, was not known as a hangout for criminals and the officers had no information whatever about defendant. They had only the above mentioned description of a robber. Defendant when seen by them was not on the street in the middle of the night nor engaged in any suspicious activity; he was sitting at the bar attending strictly to his own affair, a drink

of liquor. As soon as he heard of his being a robbery suspect he denied any participation in the event and offered to go to the victim to prove that he was not the robber.

This was the kind of promiscuous search that condemns road blocks and searching all cars, a practice condemned in *People* v. *Gale*, 46 Cal.2d 253, 256 [294 P.2d 13]. The situation at bar is similar to the one involved in *People* v. *Dewson*, 150 Cal.App.2d 119, 129 [310 P.2d 162], wherein the court remarked by way of dictum: "If the officers in the instant case had sufficient probable cause solely on the basis of the data provided by the information, they would also have sufficient cause to arrest any Negro anywhere in San Francisco driving a car similar to the one described."

Cases cited by respondent to support the sufficiency of the description upon which the police acted are not controlling for they differ factually in the important respect that each furnished some one fact or combination of facts which pointed toward easy recognition of the described person or some conduct on his part suggestive of consciousness of guilt. Those cases are, *People* v. *Holguin*, 145 Cal.App.2d 520 [302 P.2d 635]; *People* v. *Borbon*, 146 Cal.App.2d 315 [303 P.2d 560]; *Draper* v. *United States*, 358 U.S. 307 [79 S.Ct. 329, 3 L.Ed.2d 327]; *People* v. *Romero*, 156 Cal.App.2d 48 [318 P.2d 835]; *People* v. *Johnson*, 157 Cal.App.2d 555 [321 P.2d 35]. A similar case is *Willson* v. *Superior Court*, 46 Cal.2d 291, 295 [294 P.2d 36].

The accusatory pleading alleged prior conviction of a felony and defendant denied the same. The court made no finding upon it and sentenced defendant to nine months in the county jail. There is nothing in the record to suggest that the arresting officers had any such information concerning defendant and hence they were not entitled to deal with him upon the assumption that he was a felon.

Cases upholding the right of officers to interview persons on the street in the middle of the night or seen under suspicious circumstances are not here applicable. *People* v. *Harvey*, 142 Cal.App.2d 728, 731 [299 P.2d 310], is pertinent: "The People however argue that since the officers had the right to interrogate a man found upon the street at night (*People* v. *Blodgett*, 46 Cal.2d 114 [293 P.2d 57]) the conduct of the defendant in backing away and refusing to take his hands from his pockets constituted suspicious conduct which justified the officers in seizing and searching the defendant

(*People* v. *Blodgett, supra*; *People* v. *Martin*, 46 Cal.2d 106 [293 P.2d 52]). The difficulty with this argument is that the police officers were not interrogating the defendant, but by their own unqualified testimony they were arresting him.''

In *Gascon* v. *Superior Court*, 169 Cal.App.2d 356, 358 [337 P.2d 201], the court said: ''That the officers did not have probable cause to arrest petitioner is not disputed by the People nor could it be for he was lawfully upon the public streets at night and had not committed any acts which would tend to arouse suspicion prior to his flight.'' See also *People* v. *Harris,* 146 Cal.App.2d 142, 144-146 [304 P.2d 178].

*People* v. *Gale, supra,* 46 Cal.2d 253, 256-257: ''The attorney general contends that since the front of the car appeared to have been in a recent accident, the officers had reasonable cause to arrest defendant for hit-and-run driving. [Citation.] In view of the large number of traffic accidents and the fact that only a small percentage of these involve violations of Vehicle Code, section 480, however, the mere fact that the front end of the car was damaged would not constitute reasonable cause to believe defendant had violated that section. [Citation.] . . . Even if it is assumed that the damaged condition of the car would justify the officers in stopping it and questioning the driver [citations], when that questioning elicited an explanation wholly consistent with innocence, no basis was established for arresting defendant and searching him and his car.''

In the case under consideration appellant was not on the street when the officers accosted him, he was not acting suspiciously and he was given no opportunity to respond to interrogation before he was searched. The description the police applied to him would fit an untold number of young Mexicans. There was no basis for a lawful search. Nor is there room for the presumption of lawful conduct on the part of the officers such as arises from failure to show that they acted without a warrant (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23]), for the evidence in the instant record shows circumstantially, but conclusively, that there was no warrant for search or arrest because the officers had no opportunity to obtain one.

▮ The claim that appellant voluntarily disclosed the vital and condemning evidence cannot prevail. He was acting under the immediate influence of the unlawful arrest and the threat and assurance that he would be searched at the police

station. It was while he was in the police car on the way to the police station that he admitted that he had four marijuana cigarettes on his person. Handcuffed, he was physically unable to resist a search and, having been arrested for the avowed purpose of accomplishing a search at the police station, he knew that further concealment or oral resistance was futile. Thus coerced, he confessed. That confession was the immediate product of the unlawful arrest, "the fruits of such unlawful conduct." (*Walder* v. *United States*, 347 U.S. 62, 65 [74 S.Ct. 354, 98 L.Ed. 503].) Therefore it was inadmissible.

We again quote *Gascon* v. *Superior Court, supra,* 169 Cal. App.2d 356, 358: "There being no probable cause for arrest, if the officers had carried out their threat to search petitioner's person and had found the contraband in the process of the search, there would be no question but that the evidence was illegally obtained and, therefore, inadmissible. (*People* v. *Harvey, supra* [142 Cal.App.2d 728 (299 P.2d 310)]; *People* v. *Simon, supra* [45 Cal.2d 645 (290 P.2d 531)]; *People* v. *Brown, supra* [45 Cal.2d 640 (290 P.2d 528)].)

"In the present case petitioner's flight was caused by the threat of the officers to illegally search his person which they could, without question, have put into effect, and the discarding by the petitioner of the evidence upon his person was but a product of the threat. We cannot distinguish this case in principle from that of *Badillo* v. *Superior Court,* 46 Cal.2d 269 [294 P.2d 23]. In that case the petitioner fled from the premises which had been illegally entered by the investigating officers. In fleeing he threw from his person and into the hands of an officer waiting outside the front door of the premises certain contraband. In holding that the evidence was erroneously admitted into evidence at petitioner's preliminary hearing and in issuing a peremptory writ of prohibition against his trial upon the information which resulted from that hearing the Supreme Court said (p. 273):

" 'The attorney general contends that defendant abandoned the evidence when he threw it toward. Agent Hipkins and that therefore he may not object to its use against him. It clearly appears, however, that defendant's flight out the front door and attempted disposal of the evidence was the direct result of Officer Getchell's illegal entry, and accordingly, the evidence was obtained in violation of constitutional guarantees.'

"In the cited case as well as in the case at bar, the petitioner was fleeing from the attempted illegal invasion of his consti-

tutional rights (U.S. Const., Fourth Amendment; Cal. Const., art. I, § 19), and in each case, during the flight, he attempted to dispose of the evidence which the officers would have obtained had they been able to complete the threatened unlawful act. In each case the evidence, being the product of the illegal acts of the officers, was illegally obtained.''

*People* v. *Dixon,* 46 Cal.2d 456, 458 [296 P.2d 557]: ''It follows, however, from the officer's own testimony that they had no warrant and from the absence of any evidence to justify their entry, arrest, and search that the evidence was illegally obtained and should therefore have been excluded. (Citations.) Defendant's testimony in explanation of her possession of the narcotic that Mrs. Lopez forced her to keep it revealed that she knowingly possessed it. This testimony, however, was impelled by the erroneous admission of the illegally obtained evidence and cannot be segregated from that evidence to sustain the judgment.'' See also *People* v. *Mills,* 148 Cal.App.2d 392, 402 [306 P.2d 1005].

*People* v. *Stewart,* 232 Mich. 670 [206 N.W. 337, 338], cited with approval in *Badillo* v. *Superior Court, supra,* presents a situation closely parallel to the one at bar: ''After arrest, on the way to the jail, defendant took from his pocket and threw away a bottle of whisky. The officer succeeded in recovering a part of the liquor, and it was received in evidence over objection. It ought not to have been received. It was procured by means of the unlawful arrest. Had the officer searched defendant after the arrest, and taken the whisky, and later offered it in evidence, the situation, in principle, would not be different.''

Without the evidence thus wrongfully obtained by the police officers no conviction upon the instant charge is possible.

The judgment and order denying new trial are reversed with instructions to the lower court to dismiss the information.

Fox, P. J., and Richards, J. pro tem.,* concurred.

A petition for a rehearing was denied May 18, 1960, and respondent's petition for a hearing by the Supreme Court was denied June 14, 1960.

---

*Assigned by Chairman of Judicial Council.