[Crim. No. 5229. First Dist., Div. One. Apr. 15, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED JAMES STEWART, Defendant and Appellant.

Garry Brennan, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Edward P. O'Brien, John F. Kraetzer and Horace Wheatley, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, J.—Having been found guilty by a jury of possession of marijuana (in violation of Health & Saf. Code, § 11530), defendant appeals from the judgment of conviction entered upon this verdict.[1] Defendant contends that the judgment should be reversed because (1) his arrest was unlawful and therefore the packet of marijuana cigarettes which the officers of the police and sheriff's departments discovered in the patrol car used to transport defendant to the sheriff's office following his arrest was erroneously admitted into evidence; (2) the trial court erred in admitting into evidence facts relating to a prior arrest of defendant; and (3) the jury was improperly instructed in several respects. We have concluded that defendant's first contention is meritorious and that therefore the judgment should be reversed.

Among the evidence introduced at defendant's trial was a packet of four marijuana cigarettes discovered by Deputy Sheriff Smith of the Del Norte County Sheriff's Office in the patrol car which was used to transport defendant to the sheriff's office following defendant's arrest on the evening of December 3, 1964. Defendant objected to the admission of this evidence on the basis that it was obtained by the officers incident to an unlawful arrest. The trial court, however, overruled defendant's objection, it having determined at the commencement of the trial that as a matter of law defendant's arrest was lawful. This determination was made at defendant's request and was based, with defendant's consent, upon the evidence adduced at the preliminary hearing.[2] Accordingly,

---

[1]Defendant was also charged with a sale of marijuana (in violation of Health & Saf. Code, § 11531) and driving a vehicle while under the influence of narcotics (in violation of Veh. Code, § 23105). However, as to these two counts the jury returned a verdict of not guilty.

[2]References to the preliminary hearing are to that held on April 7, 1965 based on the arrest of defendant which took place on March 15, 1965. This arrest was made after defendant was set free following his

preliminary to our determination of the legality of defendant's arrest and the propriety of the trial court's order overruling defendant's objection to the admission into evidence of the packet of marijuana cigarettes found in the patrol car, we set forth the evidence adduced at the preliminary hearing concerning the circumstances surrounding defendant's arrest and the discovery by the officers of the incriminating evidence.

Sergeant McMullen of the Crescent City Police Department testified that on the evening of December 3, 1964 he was at the Antler's Cafe in Crescent City; that at approximately 8 p.m. he was approached by Bill Burns, who asked McMullen to contact Deputy Sheriff Black of the Del Norte County Sheriff's Office; that about a half hour later McMullen was approached by Mike Chambers, who told McMullen that he had something for Black and that he wanted to contact Black; and that McMullen directed Chambers to contact Deputy Sheriff Grenbemer. Grenbemer testified that at approximately 8:50 p.m. on the evening of December 3, 1964 he was contacted by McMullen; that he then proceeded to the Antler's parking lot, where he was approached by Chambers, who gave Grenbemer a round white object; that Chambers stated to Grenbemer that Bill Burns, who had given Chambers this object in the Antler's, had told Chambers that "Sparky" Stewart had sold this object to Burns for $1.00 and had asked Chambers to contact Black immediately;[3] that Grenbemer examined the object and concluded that it contained marijuana; that on the basis of the information imparted to Grenbemer by Chambers and the object which Chambers gave Grenbemer, Grenbemer decided to arrest defendant; that, accordingly, when defendant and his female companion left the Antler's at approxiimately 11 p.m., they were stopped by Grenbemer, who was accompanied at the time by Smith and Bach; that defendant and his companion were placed under arrest by Bach and Smith, respectively, were handcuffed, and were placed in the rear seat of 'Sheriff's Patrol Unit 7, defendant being placed on the left side behind the driver and his companion being placed on the right side; and that, accompanied by Grenbemer, Bach then drove Patrol Unit 7 to

initial arrest on December 3, 1964, arraignment and being held to answer in the superior court based on the preliminary hearing which was held on December 9, 1964.

[3] Officer Bach of the Crescent City Police Department testified that he was with Grenbemer in the Antler's parking lot when Chambers spoke with Grenbemer and gave Grenbemer the white object.

the sheriff's office where defendant and his companion were removed from the car, booked, and jailed.

Both Smith and Bach corroborated Grenbemer's testimony as to the manner in which defendant was arrested, handcuffed, and transported to the sheriff's office. In addition, they testified that after defendant and his companion had been removed from Patrol Unit 7 at the sheriff's office, the two officers commenced a search of this patrol car; and that during this search Smith discovered a packet of four marijuana cigarettes on the floor of the car underneath the driver's seat approximately 5 inches from the back edge. Smith testified that he and Grenbemer had thoroughly cleaned out Patrol Unit 7 prior to defendant's arrest and that either he or Grenbemer had been present with the car from the time it was cleaned until the time of defendant's arrest. In addition, Bach testified that after defendant had been placed in the patrol car Bach heard defendant say to his companion, " 'I hope to God they don't find it.' " Grenbemer also testified that while the patrol car was en route to the sheriff's office he observed no movements on the part of defendant's companion, but that upon arrival at the sheriff's office he did hear 'defendant say to his companion, " 'Don't say anything.' " Smith and Bach both testified that before the package containing the cigarettes was removed from the patrol car it was photographed by Smith, who then delivered it to Grenbemer.[4] Finally, Grenbemer testified that prior to December 3, 1964, although he knew Chambers, he had never received any information from either Chambers or Burns relating to any other offenses nor had he ever arrested anyone on the basis of any information received from Chambers or Burns.

Defendant's contention that his arrest was unlawful and that the marijuana cigarettes had been obtained as a result of this unlawful arrest is countered by the People's assertion that defendant's arrest was based upon probable cause and that, moreover, the discovery of the marijuana cigarettes by the officers need not be justified as incident to defendant's arrest because this evidence was not obtained as a result of a search of defendant. In *People* v. *Schultz*, 238 Cal.App. 2d 804, 810 [48 Cal.Rptr. 328], we reiterated the principles

---

[4]At the trial defendant objected to the introduction of this photograph into evidence on the ground that, like the cigarettes themselves, it was illegally obtained. Although defendant maintains this position on appeal, we do not treat the admissibility of the photograph as a separate issue; rather our discussion and conclusion concerning the admissibility of the cigarettes themselves relate equally to the objected-to photograph.

governing the legality of an arrest and incidental search and seizure as follows: "In considering the propriety of the trial court's ruling upholding the arrest of defendant and the incident search and seizure, we note that a police officer may make an arrest without a warrant and conduct an incidental search where he has reasonable cause to believe that the accused has committed a felony. (§ 836 [Pen. Code]; *People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Cedeno,* 218 Cal.App.2d 213, 218 [32 Cal.Rptr. 246].) Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. (*People* v. *Torres, supra,* p. 866; *People* v. *Cedeno, supra,* p. 219.) Such reasonable cause to justify an arrest and search may be derived from the personal observations of the arresting officer or from information supplied by a reliable informant. (*People* v. *Prewitt,* 52 Cal.2d 330, 337 [341 P.2d 1]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36]; *People* v. *Cedeno, supra,* p. 219.) Concerning the reliability of a particular informant, it is well established that where reliability cannot be predicated upon the police officer's previous acquaintance and dealings with the informant, it can nevertheless be established by the proven accuracy of the information given by the informant. Such substantiation may be supplied by corroborative facts known or discovered by the police officer. (*People* v. *Cedeno, supra,* p. 220; *People* v. *Bates,* 163 Cal.App.2d 847, 852 [330 P.2d 102]; *People* v. *Prewitt, supra,* p. 337; *Willson* v. *Superior Court, supra,* p. 295.) "

Turning to the instant case in the light of these principles it should first be noted that Chambers was not shown to be a reliable informant; nor is it contended by the People that he was. It is claimed, however, that the accuracy of the information which he gave to Grenbemer was substantiated by corroborative facts. These are asserted to consist of the delivery by Chambers of the one-half portion of the cigarette to Grenbemer and Smith's testimony that defendant "was in a staggering manner" as he left the Antler's shortly before his arrest. These contentions are without merit. With respect to the last-mentioned contention we note that neither Grenbemer nor Bach, who had also observed defendant walking to his car, testified that he was walking in a staggering manner. Although Smith did assist Grenbemer and Bach in the arrest of defendant and his companion after the officers

had stopped defendant's car, there is nothing in the record to indicate that Smith had informed Grenbemer or Bach that Smith had observed defendant walking in a staggering manner or that any of the officers considered or concluded that defendant's manner of walking had any bearing on whether or not defendant had sold Burns the marijuana cigarette. While it was reasonable for Smith to assume that since defendant came out of a tavern he was staggering because he had been drinking, there is nothing in the record to show that a person who uses marijuana is caused to walk in a staggering manner or that Smith believed defendant was staggering because he had used marijuana.

Adverting to the information given by the informant and the People's contention that this information was sufficiently corroborated, we note, firstly, that the informant was Chambers, not Burns. It was Chambers who informed the police that the cigarette he was turning over to them had been received by him from Burns, who had told Chambers he had purchased it from defendant. In *Cedeno* police officers escorted the informant to a hotel, gave her some money and sent her into the hotel. The informant returned approximately five minutes later and turned over one marijuana cigarette to the police, stating she had purchased it in room 24 from a person named ''Al'' for $1.00. She later pointed ''Al'' out to the police. These circumstances, including the information imparted to the police by the informant that on the day of the defendant's arrest she had observed marijuana in his room, were held by us not to amount to substantial corroborative facts known or discovered by the police but to constitute ''additional information received from the informant.'' (P. 222, fn. omitted.) Noting Justice Tobriner's statement in *Ovalle* v. *Superior Court*, 202 Cal.App.2d 760, 763 [21 Cal.Rptr. 385], that ''The quantification of the information does not necessarily improve its quality; the information does not rise above its doubtful source because there is more of it,'' we opined in *Cedeno* that none of the alleged corroborative circumstances resulted from information received by the police from other sources or from their own investigation, but that they emanated ''solely from the lips of the informant.'' (P. 222.) This is the situation in the instant case. The only indication of the source of the marijuana cigarette was Chamber's own statement. In the light of the principles above reiterated this information was not enough to supply the probable cause justifying a search or an arrest without a warrant.

We now turn to the contention that the finding of the cigarettes in the police car did not constitute a search and therefore no constitutional right of defendant was infringed upon. We agree with the People's contention that these cigarettes were not obtained as the result of a search. However, this circumstance in and of itself does not preclude the violation of constitutional guarantees. Accordingly, the inquiry in the instant case is directed not to whether there was a search or seizure as contemplated by law, but whether the evidence found in the police car was the product of the illegal acts of the police officers and was therefore illegally obtained.

In *Badillo* v. *Superior Court*, 46 Cal.2d 269 [294 P.2d 23], police officers went to a house without a search warrant. One of the officers knocked at the back door and, receiving no response, forced the door open and entered the house. Shortly thereafter one Victor Badillo ran out the front door and threw a package of heroin toward one of the officers who was stationed at the front of the house. The Supreme Court, in granting a writ of prohibition to compel the trial court to set aside the information charging Badillo with the possession of heroin, concluded that under the evidence the entry into the house was unlawful and, having so concluded, determined that the defendant's flight out the front door and the attempted disposal of the evidence was the direct result of the police officer's illegal entry, and accordingly, that the evidence was obtained in violation of constitutional guarantees. (Citing *Silverthorne Lbr. Co.* v. *United States*, 251 U.S. 385, 392 [40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426]; *People* v. *Berger*, 44 Cal.2d 459, 462 [282 P.2d 509]; *People* v. *Stewart*, 232 Mich. 670 [206 N.W. 337, 338].)

Similarly, in *Gascon* v. *Superior Court*, 169 Cal.App.2d 356 [337 P.2d 201], police officers stopped the petitioner on the street at night, questioned him and then told him they were going to search him. The petitioner thereupon attempted to flee and dropped some objects from his pocket which were recovered by the officers and found to contain marijuana. Relying upon *Badillo*, the reviewing court held that the evidence obtained was the product of the illegal acts of the officers and was thus illegally obtained upon the rationale that since there was no probable cause for arrest the discarding of the evidence by the petititoner was but a product of the threat to illegally search his person.

Again in *People* v. *Allen*, 214 Cal.App.2d 136 [29 Cal.Rptr. 455], the defendant was unlawfully arrested and incarcerated

on a burglary charge. While the defendant was in jail two officers approached his cell and ordered him to step into an adjoining passageway. One of the officers started to search the defendant's bed, then noticed the defendant place something in his mouth. The officers forced the defendant's mouth open but found nothing in it. However, they did find a moist packet on the floor of the defendant's cell at the place where the defendant's head had been. It was subsequently determined that this packet contained heroin and based upon this evidence the defendant was charged, tried and convicted for illegal possession of heroin. In reversing the defendant's conviction the appellate court concluded that the packet containing heroin was obtained from defendant as a " 'direct result' " or the " 'immediate product' " of an unlawful arrest, was "tainted by the illegality of that detention" and that, therefore, this evidence was obtained in violation of the constitutional guarantee against unlawful search and seizure. (P. 138.) The reviewing court noted that the defendant's actions "were prompted by the threat of an obviously impending search of his person which, under the circumstances of this case, would have been unlawful because directly related to his unlawful detention; were the result of a type of coercion; and may not be relied upon to justify the search actually made."(P. 138; citing *Walder* v. *United States,* 347 U.S. 62, 64 [74 S.Ct. 354, 98 L.Ed. 503] ; *People* v. *Dixon,* 46 Cal.2d 456, 458 [296 P.2d 557] ; *Badillo* v. *Superior Court, supra,* 46 Cal.2d 269, 273; *People* v. *Macias,* 180 Cal.App.2d 193, 198 [4 Cal.Rptr. 256] ; *Gascon* v. *Superior Court, supra,* 169 Cal.App.2d 356, 359; *United States* v. *Dixon,* 117 F.Supp. 925, 927; *People* v. *Stewart, supra,* 206 N.W. 337, 338.)

In *Macias* the defendant, acting under the immediate influence of an unlawful arrest and the threat and assurance that he would be searched at the police station, admitted in the police car, while handcuffed, that he had four marijuana cigarettes on his person. It was there held that the confession was inadmissible because it was the immediate product of the unlawful arrest, " 'the fruits of such unlawful conduct.' " (P. 198.)

*Stewart,* cited with approval in *Badillo,* presented a situation where after arrest, on the way to jail, the defendant took from his pocket and threw away a bottle of whiskey, a part of which was recovered by an officer and was received into evidence over objection. In holding that this evidence should not have been received because it was procured by means of the

unlawful arrest, the reviewing court stated: "Had the officer searched defendant after the arrest, and taken the whiskey, and later offered it in evidence, the situation, in principle, would not be different." (P. 338.)

The case of *People* v. *Amos,* 190 Cal.App.2d 384 [11 Cal. Rptr. 834], relied upon by the People, is readily distinguishable on the basis that there the arrest was deemed to be lawful. In that case the defendant, who was acting furtively and seemed to be extremely nervous, was stopped for questioning by police officers in the nighttime in a vicinity where burglaries had recently occurred. These officers had with them a report of a " 'rubber ball strangler' " for whom the police were searching. (P. 388.) Asked for identification, the defendant showed the officers a property slip showing he had been arrested for petty theft. The officers placed him in the patrol car while they checked headquarters to see if he was wanted. As soon as the defendant got into the patrol car he began to talk about the " 'rubber ball strangler' " although the police had not yet mentioned the matter to him. (P. 388.) He continued to talk about it and acted nervous. Because he fitted so well the description which the police had of the strangler they placed him under arrest and took him to Central Station to see if he should be booked for the strangulation crime. When the defendant got out of the car at headquarters the officers noticed a small box on the door ledge which had not been in the car before and could not have been on the ledge when the door was closed. In emerging from the car, the defendant kicked the box out of the car. He thereafter denied ownership of the box, which was subsequently found to contain heroin. Based on this evidence the defendant was charged and tried for possession of heroin. In affirming the defendant's conviction the appellate court rejected the defendant's contention that the heroin was obtained by the police through an illegal search and seizure. The basis for the court's conclusion on this point was that there was in fact no search and seizure since the officers merely observed what was open and patent. While the opinion does not discuss the legality of the defendant's initial arrest it is apparent that the court acted on the premise that said arrest was lawful.

In view of the foregoing we conclude that in the instant case the evidence consisting of the packet of cigarettes found in the police car was the product of the unlawful arrest and was, therefore, illegally obtained. Without this evidence no conviction upon the instant charge is possible.

Since the judgment must be reversed we need not dwell at length upon the other assignments of error. With respect to the admission in evidence of facts relating to defendant's prior arrest for possession of marijuana,[5] it suffices to say that evidence tending to show a defendant's commission of a criminal offense is admissible when such evidence tends to prove an essential element of the offense for which the defendant is being prosecuted (*People* v. *Torres*, 98 Cal.App.2d 189, 192 [219 P.2d 480]; *People* v. *Sykes*, 44 Cal.2d 166, 170 [280 P.2d 769]; *People* v. *Leyva*, 187 Cal.App.2d 249, 254 [9 Cal. Rptr. 469]; *People* v. *Gonzales*, 186 Cal.App.2d 79, 83 [8 Cal. Rptr. 704]); that in narcotics cases this rule has been applied where the evidence sought to be admitted tends to show the defendant's knowledge of the narcotic character of the article allegedly possessed by him, even where the defendant does not deny such knowledge since the prosecution bears the burden of proving such knowledge (*People* v. *Horn*, 187 Cal.App.2d 68, 74-75 [9 Cal.Rptr. 578]; *People* v. *Leyva, supra,* p. 254; *People* v. *Gonzales, supra,* p. 83); that since defendant's prior arrest occurred only six months before the instant arrest evidence of the prior arrest was not too remote, and in any event, the remoteness of a prior offense does not affect the admissibility of the evidence but rather goes to its weight (*People* v. *Hernandez*, 209 Cal.App.2d 33, 40 [25 Cal.Rptr. 640]; *People* v. *Brown*, 170 Cal.App.2d 80, 83 [338 P.2d 504]); and that evidence of the prior arrest was not rendered inadmissible merely because the charges upon which it was based were subsequently dismissed, since the admissibility of evidence of prior misconduct does not require that there be a conviction for this misconduct (*People* v. *Sykes, supra,* pp. 169-170; *People* v. *Torres, supra,* pp. 191-192; *People* v. *Raleigh*, 83 Cal.App.2d 435, 442-443 [189 P.2d 70]).

 We wish to point out, however, that while the court properly admonished and instructed the jury that the evidence of the prior arrest for possession of marijuana was received for the limited purpose of showing that defendant had knowledge of the narcotic nature of the substance which formed the

---

[5]Officer Robert Martin of the San Francisco Police Department testified that he and several other officers of the department had arrested defendant in San Francisco on June 13, 1964 for possession of marijuana. According to Martin, defendant was arrested while driving alone in a vehicle and at the time of the arrest a paper bag containing marijuana was found in the vehicle. Martin further testified that defendant was charged with possession of marijuana and held to answer in the superior court, but that on motion of the prosecution the matter was dismissed at the request of police officials.

basis of the instant charges against him, and while the court's instruction in the form of CALJIC No. 33 was essentially correct, it contained an erroneous statement which might have caused the jury to conclude that defendant had been convicted of the crime charged in the previous arrest. Accordingly, the trial court should not have instructed the jury that "Evidence was offered in this case for the purpose of showing that the defendant had committed *another crime* other than the one of which he is accused" (italics added), since defendant was not convicted of the offense for which he was previously arrested. Rather the trial court should have instructed the jury in terms alluding to the evidence actually received, that is, defendant's prior arrest upon the charge of possessing marijuana. (See *People* v. *Toth*, 182 Cal.App.2d 819, 828 [6 Cal.Rptr. 372].)

In view of defendant's acquittal of the charge of selling marijuana with respect to which Burns was not an accomplice but a purchaser (*People* v. *Freytas*, 157 Cal.App.2d 706, 714 [321 P.2d 782]; *People* v. *Mimms*, 110 Cal.App.2d 310, 314 [242 P.2d 331]), and since Burns obviously had no connection with the possession offense of which defendant was convicted, we need not discuss the propriety of the trial court's refusal to give certain instructions proposed by defendant on the definitions of a principal and an accomplice, aiding and abetting, and the requirements that the testimony of an accomplice be corroborated, nor need we discuss the court's failure to give the instruction which defendant proposed on the subject of joint possession of narcotics.

The judgment is reversed.

Sullivan, P. J., and Sims, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 8, 1966.