[Crim. No. 5266. Second Dist., Div. Three. Apr. 27, 1955.]

THE PEOPLE, Respondent, v. LUKE PATRICK
GUARINO, Appellant.

James O. Warner for Appellant.

Edmund G. Brown, Attorney General, and Theodore S. Tabah, Deputy Attorney General, for Respondent.

SHINN, P. J.—Luke Patrick Guarino appeals from convictions of grand theft and burglary and from an order denying his motion for a new trial. He was accused of having suffered three prior convictions, which he admitted.

It was alleged in the information that on or about December 5, 1953, defendant unlawfully and feloniously entered a shop in the store of I. Magnin and took about $15,000 worth of jewelry from two showcases. Defendant was arrested on the evening of January 11, 1954, in the Mitchell Hotel, located in Los Angeles, and was booked at the Wilshire Police Station at about 4 a. m., January 12, 1954. His bail was fixed prior to the time he was arraigned before a magistrate on January 19, 1954.

The jewelry was taken from the cases of Laykin & Company, jewelers, on the main floor of the store. On December 5th at 6 :30 p. m., Mr. Laykin, the owner, checked his three showcases and found them to be locked. He was the last one in his department to leave the building. On the following Monday morning, it was discovered that the showcases had been broken open. A gold ring was found on the bottom landing of the fire escape. This ring was identified by a tag as having come from the jewelry showcases. An inventory of the missing items was made and they were found to be of the value of $15,000.

According to officers' testimony, defendant Guarino was arrested on January 11, 1954, about 10 :30 p. m. in his hotel, and was taken to his room for about 10 minutes and searched. At the time of the arrest a woman's diamond wristwatch was found in defendant's coat pocket, wrapped in a piece of tissue paper. It was subsequently identified by the serial number of the watch movement and the case as having come from Laykin's. Defendant also had about $1,200 in large bills in his possession. He gave a gold key watch and key holder to a

friend, Shirley Johnson, shortly before Christmas, which she gave to the police and which were subsequently identified by Mr. Laykin by the watch movement number as having come from his store. Alice Rienhart, a salesgirl for Laykin, testified she waited on defendant on December 4th, shortly prior to the theft, and that she remembered his mannerisms, nervousness and speech, and noted a scar on his forehead. Mr. Bugel, the store night watchman, saw a man at about 7:10 p. m., December 5, 1953, standing on the porte cochere of the roof 8 or 9 feet away from him. The witness asked him what he was doing on the roof and the man answered "just investigating." He then fled. The witness later at the police station identified the voice of the defendant as the voice he had heard from a group of several men. He also identified the blue topcoat he had on.

Officer Carey testified that while enroute to the Hall of Justice for arraignment, defendant had stated, ". . . this is the kind of day I like to hit residences . . . all the cops are holed up drinking coffee . . ." and that defendant had said he was ". . . a master burglar"; that he had gambled and lost, but that he planned to get a woman jury and have them in the palm of his hand at the trial, and "Tell all your friends, and tell the newspapers . . . because I am going to put on a big show for you." Officers testified that at the time of the arrest defendant was questioned as to whether there was any more jewelry in his room and stated, "There is no use looking any further. There is no more jewelry in this room. . . . What are you worrying about more jewelry for? You have got the piece. That is enough." They further testified that at 11:30 p. m. the same evening, defendant was taken to the detectives' room of the Wilshire Police Station for further questioning. At about 2 a. m. he was taken to be booked, but when observed to be limping was taken to a receiving hospital where the examining physician advised him to obtain an elastic bandage and gave no other treatment. Defendant was booked at 4 a. m. January 12th.

Defendant testified he was abused while being questioned by the officers; the officers extended his legs until they rested on another chair and then sat on them three or four times with each incident lasting 15 to 20 minutes, which caused him to limp; that one of the officers hit him with a "judo smack" on the back of his neck and one of the officers knocked him to the floor in his hotel room before he was taken to the station. He claimed Officer O'Mara hit him on the chest sev-

eral times with his fist and another officer slapped him on the side of the face. The officers categorically denied these abuses. Defendant testified that the officers would not let him call his attorney or see an attorney for five days; that he was unable to make a telephone call or send a telegram during this period and that he was not taken before a magistrate until seven days after arrest, when bail was set. Although he had possession of stolen articles he claimed to have purchased them.

On appeal defendant claims he was prejudiced by the refusal of the arresting officers to permit him to obtain counsel; that he was illegally detained for seven days before being taken before a magistrate as required by law (Pen. Code, § 825), and that error was committed in the admission of certain prejudicial statements of his among which was one to the effect he was ". . . a master burglar." A further assignment of error is that a conviction of burglary and grand theft cannot be sustained since it would be a double punishment for one act or transaction in violation of section 654 of the Penal Code.

Appellant's first ground of appeal is that he was prejudiced by refusal of the officers to allow him to obtain counsel. He testified that he asked leave to call his attorney, but that he was refused permission. He testified that he was unable to see counsel for at least five days. Seven days elapsed before he was brought before a magistrate after his arrest. He claimed that one Johnny Gungus and one Mono Tepoes perpetrated the crime and that he wished to obtain counsel in order to locate such persons. At the arraignment and at all times during the trial defendant had competent counsel.

The due process clause of the Fourteenth Amendment of the Constitution and article I, section 13, California Constitution, have been interpreted to guarantee the defendant the right to be represented by counsel in every stage of the proceedings; deprivation of this guarantee may be a violation of the due process clause of the Fourteenth Amendment. (14 Cal.Jur.2d 382, 383.) Section 825 of the Penal Code also provides that at any time after arrest any attorney may, at the request of the accused or his relatives, visit the prisoner.

However, in order to constitute deprivation of due process the denial of the right must have so fatally infected the regularity of the appellant's trial and his conviction as to violate the fundamental aspects of fairness and result in

558

a miscarriage of justice. (*Lisenba* v. *California*, 314 U.S. 219, 236 [62 S.Ct. 280, 86 L.Ed. 166].) In the Lisenba case, the court stated: "As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevent a fair trial."

A similar question was presented in *People* v. *Boyden*, 116 Cal.App.2d 278 [253 P.2d 773], where the accused was denied the right to obtain counsel, as here. The court said, citing *People* v. *Stroble*, 36 Cal.2d 615, 618 [226 P.2d 330] : ". . . it is not the function of this court to reverse a judgment solely as a rebuke to 'law enforcement' officers for their own lawless acts, and improper administration of the law, independent of the trial which resulted in that judgment." In the present case the conduct of the officers in refusing to allow accused to obtain counsel immediately was reprehensible and may not be condoned but it did not affect the fairness of the trial of the accused. He was ably represented by counsel, who had almost three months to prepare the case for trial.

■ Appellant urges next that his being held for seven days before being taken before a magistrate violated the due process guarantees of the federal and state Constitutions, and as such was prejudicial to his defense. Section 825 of the Penal Code requires that one placed under arrest must in all cases be taken before a magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays, but the violation of defendant's rights in this respect does not require a reversal. Defendant must show that through this wrongful conduct he was deprived of a fair trial.

In the Boyden case a similar situation was presented. Defendant there was held incommunicado from the time of his arrest, February 29th, until March 6th before being brought before a magistrate. There, as here, there was a complete lack of any admissions obtained during this period, use of which at the trial would have constituted a denial of due process or which would have prevented a fair trial.

In *United States* v. *Mitchell*, 322 U.S. 65, 70, 71 [64 S.Ct. 896, 88 L.Ed. 1140], it was held that holding the defendant for eight days before the arraignment did not render oral confessions made by him shortly after arrest inadmissible where the same were unrelated to the detention. And in *People* v.

*Zammora,* 66 Cal.App.2d 166, 222, 224 [152 P.2d 180], where defendants were held in custody from four days to a week before they were arraigned, statements and admissions made within two days after the arrest were held admissible notwithstanding the wrongdoing of the officers.

A police officer testified that defendant had stated while in a police car enroute to the Hall of Justice for arraignment that "he was a master burglar . . . when he got out . . . would go back east and pull big safe jobs," and that defendant said: "Tell all your friends, and tell the newspapers, get all your friends up there, because I am going to put on a big show for you." Further the officer testified that he said: "I have been a burglar all my life . . . you know that." These and some similar statements were claimed to have been made by defendant long after his arrest but he does not claim that he made any admissions as a result of his confinement or because he was deprived of an opportunity to obtain counsel. On cross-examination defendant admitted his former convictions. He contends that error was committed in receiving evidence of his admissions to the officers and in his cross-examination.

█ There is no merit in these contentions. No objection was made to the questions which elicited testimony of the alleged admissions and in fact the statements were no more damaging than those made upon the occasion of the arrest. █ It was proper to elicit on cross-examination the fact that defendant had previously been convicted of a felony.

As the last assignment of error, it is contended that defendant has been subjected to double punishment. He cites *People* v. *Logan,* 41 Cal.2d 279 [260 P.2d 20], in which the court held that robbery and assault with a deadly weapon used in the commission of armed robbery constitute a single crime for which only one punishment could be inflicted. This holding is not in point. Defendant also cites section 654 of the Penal Code which prohibits double punishment for one act. It is contended that the theft was not a separate crime from the burglary. The point is without merit. █ The crime of burglary is complete on the entering of the building with intent to commit a felony, though the intended felony be not committed. █ Larceny is a separate act and involves the unlawful asportation of the personal property of another, with intent to deprive him thereof; and if a larceny is actually perpetrated after the burglarious entry a second crime is committed. (14 Cal.Jur.2d 287; *People* v. *Devlin,*

143 Cal. 128, 129 [76 P. 900]; *People* v. *White*, 115 Cal.App. 2d 828, 832 [253 P.2d 108].)

Defendant was afforded a fair trial; there was no violation of due process and defendant's contentions are without validity.

The judgment and order denying motion for new trial are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 25, 1955.