[Crim. No. 6640. Second Dist., Div. Two. Oct. 16, 1959.]

THE PEOPLE, Respondent, v. FREDDIE MAYS, Appellant.

*Assigned by Chairman of Judicial Council.

James S. Fitzpatrick, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

ASHBURN, J.—Charged in two counts of an indictment with sale of a narcotic (Health & Saf. Code, § 11500) defendant was convicted on both charges after a nonjury trial. He appeals from the judgment but makes no claim that the evidence is insufficient to support the finding of guilty. In varying forms his counsel complains about rulings of the court concerning a certain informer.

Deputy Sheriff Dorothy A. Smith testified that defendant made the two sales as charged; she was the buyer; one transaction occurred on April 7, 1958, and the other on April 18, 1958. On the first occasion she telephoned the defendant, known to her only as "Freddie," told him she wanted to purchase $10 worth of heroin; he told her to come over; she went alone to his home at 324½ West 66th Street, in Los Angeles. She had

met defendant a week before and had been to his house on that occasion with one Richard, the informer. When she arrived on the 7th a Negro named Vincent entered the house at the same time. Mrs. Smith soon went to the bathroom and as she came out defendant was standing in the hallway; she gave him $10 and he delivered a small red balloon containing heroin. Officers Gutierrez and Vacio were outside the house and she showed them the balloon she had bought.

About three days before April 18, 1958, Mrs. Smith had called defendant and asked him to get a spoon of heroin for her. On the 18th she telephoned to see if he had procured it and he told her to call back in 10 minutes. She did so and defendant said to wait where she was, i.e., at a service station at the corner of Florence and Compton. He soon arrived with two other Negroes in a black 1949 Buick. Mrs. Smith got into the vehicle with them, gave defendant $25 and rode to Slauson and Compton where she alighted and waited for defendant to return. At about 5:25 p.m. defendant arrived, she got into the car and he delivered to her a blue balloon containing a narcotic. Her testimony was corroborated to a substantial extent by "surveillance officers" who were in the immediate vicinity.

The defense was mistaken identity. Defendant testified that he never saw Officer Smith before his arrest, which occurred some weeks or months after April 18th; that he did not sell any narcotic to Mrs. Smith on the 7th or 18th of April; that she was not at the house with Richard (the informer) at any time and defendant never sold any narcotic to Richard. His wife corroborated his testimony to a certain extent. Singularly, defendant did not testify that he did not know Richard.

When the two balloons and their contents were offered in evidence defendant objected on the ground that rulings pertaining to the informer were prejudicial. The objection was overruled. Of course we have no problem of search and seizure here. There was no search and no seizure. The exhibits are the narcotics that defendant sold and voluntarily delivered to the officer and they were thereafter preserved as evidence.

Appellant's real complaint revolves around the identity and nonappearance as a witness of the informer Richard.

On cross-examination of Officer Smith it was developed that Richard was an informer who took her to defendant's home about the 1st of April, introduced her to defendant and his wife and there purchased a narcotic from defendant. Asked

the informer's name, she said she knew him only as Richard. No inquiry was made whether that was his first or last name. The witness further testified that she did not know where he lived and never saw him before or after that first visit to defendant's home. He was not with her on April 7th or 18th. She had obtained defendant's telephone number on that first occasion with his expressed consent. The witness was also asked the description of Richard and objection to that question was sustained. Counsel claimed that the information was of importance to defendant because Officer Smith further testified that the same person (defendant) made all three sales, which included the one to Richard on or about April 1st. Defendant denied any of the sales and claimed mistaken identity.

Counsel relies principally upon *People* v. *Williams*, 51 Cal. 2d 355, 359-360 [333 P.2d 19], and *People* v. *Durazo*, 52 Cal. 2d 354, 356 [340 P.2d 594]. In the Williams case there were two sales claimed to have been made by defendant and the informer participated only in the first one. In *Durazo* there were three sales and the informer took part in the first one only. In both cases it was held to be error to refuse to require the disclosure of the identity of the informer, and in each the ruling was based upon defendant's claim of mistaken identity and the possibility that the informer if produced as a witness would impeach the officer as to the first transaction, thus throwing doubt upon his testimony concerning the later sale or sales alleged to have been made by the same person, the defendant. These rulings rest not upon the principles applicable to search and seizure, but upon "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense" (quoting *Roviaro* v. *United States*, 353 U.S. 53, 62 [77 S.Ct. 623, 1 L.Ed.2d 639], which case is also quoted in the respective opinions of Justices Spence and Shenk in *Williams* and *Durazo, supra*).

▮ Those cases would be controlling here were it not for one decisive differentiation. The officer disclosed the name and all the information she had about the informer except a description of his person, which last item was ruled out by the trial judge as immaterial.

It may be that the cross-examination was unduly restricted at this point in view of the liberal rule voiced in *People* v. *Prewitt*, 52 Cal.2d 330 [341 P.2d 1], but the question of prejudice must be examined in the light of the context. ▮ Defendant did not deny that he knew Richard, and counsel's stated objective was thus phrased: "[W]e are contending

that this is not the correct defendant herein in this case. . . . I want to get all possible information relative to this informant so that I may have an opportunity to bring him into Court so that he can substantiate the defendant's defense that it was another person and not the defendant here. That is my offer of proof on that point." But he sought no continuance for the purpose of locating and producing the witness as he should have done if in earnest about desiring Richard's presence. (*Cf. People* v. *Scott,* 170 Cal.App.2d 446 [339 P.2d 162].) "It cannot be presumed that the superior court will . . . fail to grant a continuance if it is necessary to enable defendants to locate and interview the informers in the preparation of their defense." (*Mitchell* v. *Superior Court,* 50 Cal.2d 827, 830 [330 P.2d 48].) Counsel's arguments did not stress the matter of personal description; he repeatedly insisted on the right to know the name of the informer although it had been previously disclosed to him so far as known to the officer. After the ruling concerning description, counsel for defendant continued to argue as follows: "Now, Your Honor, with that I feel that the facts in this present case could come under that case, requiring the name of the informant on the series of transactions." But he had all the information the witness possessed concerning the name or whereabouts of the informer and did not attempt to learn whether Richard was the christian name or the surname.

Without any showing or intimation that the prosecutor had the ability so to do, counsel demanded that he produce Richard as a witness: "Very well, then, I have another request, and I move that the Court order the prosecution and/or the police officers to bring into Court this Richard, the informer." There was no error in the denial of this motion. In *People* v. *Alexander,* 168 Cal.App.2d 753, 754-755 [336 P.2d 565], we said: "Having received what appears to be all the information possessed by the prosecutor concerning Thomas, and having been afforded two weeks' time to locate him, appellant asserts a right to compel the prosecutor to locate and produce the witness for testimonial purposes. No cases are cited in support of this proposition, we know of none and apprehend that none can be found. Such a rule would be an unreasonable extension of the informer doctrine and we hold that it does not and should not exist. (*Cf. People* v. *Taylor,* 159 Cal.App.2d 752, 756 [324 P.2d 715]; *Dear Check Quong* v. *United States* (C.A.D.C.), 160 F.2d 251, 253; *Simmons* v. *United States* (C.A.D.C.), 220 F.2d 377, 378; *United States* v. *Gernie* (2

Cir.), 252 F.2d 664, 668-669.) '' See also *People* v. *Scott, supra,* 170 Cal.App.2d 446.

This whole discussion deals with the possibility that Richard, if sworn as a witness, would impeach Officer Smith, and further possibility that a physical description of Richard would have aided substantially in locating and producing him. We do not consider that the pyramiding of such possibilities in defendant's behalf was essential to a fair trial. The cited cases do not go so far. After an examination of the entire record and in view of defendant's failure to testify that he did not know Richard, we cannot say that, assuming error in the rulings under discussion, it is reasonably probable that a result more favorable to appellant would have been reached in the absence of such error. (*People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].)

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.