[Crim. No. 3635. First Dist., Div. Two. May 23, 1960.]

THE PEOPLE, Respondent, v. WILLIAM A. RENDER, Appellant.

*Assigned by Chairman of Judicial Council.

Dallas D. Brock, under appointment by District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Joseph I. Kelley, Deputy Attorneys General, for Respondent.

.KAUFMAN, P. J.—By an information dated September 11, 1958, the defendant was charged with selling heroin on July 6, 1958, in violation of section 11500 of the Health and Safety Code. By an indictment dated September 17, 1958, the defendant was charged with two additional counts of selling heroin on July 29, 1958. He entered a plea of not guilty to all counts and admitted the three prior convictions charged. The causes were consolidated for trial and a jury found the defendant guilty as charged. The only issues on appeal are the sufficiency of the evidence and whether the trial court erred in failing to require that the People locate and produce the informer, Norwood Poindexter.

The record reveals the following facts as to the three transactions charged: Police Officer Herbert Lee, an undercover narcotics agent, testified that on July 6, 1958, he and Officer Zelis were working with an informer named Clarence Thomas. About 11 a.m. on July 6, Thomas was searched in a black Volkswagen automobile, an unmarked police vehicle, parked at Clay and Franklin Streets in San Francisco. Thereafter, the officers and the informer went to the area of Fillmore and Ellis Streets, parked their vehicle and entered the Rainbow Café. Upon leaving the café at about 1:30 p.m. with the informer Thomas, they met the defendant. The defendant and the informer had a brief conversation, after which Thomas returned to the police car and the defendant entered a near-by parked car. Thomas was not searched by the officers at this time. The defendant's vehicle proceeded down Ellis Street for several blocks. The police vehicle followed. Both vehicles parked and the informer left the police vehicle and climbed into the rear seat of the defendant's vehicle. The defendant was sitting in the front of his car with another person; an unidentified party sat in the rear of the car. The informer remained for a few minutes and then returned to the police vehicle. The police vehicle returned to the Fillmore area and parked in front of the Booker T. Washington Hotel.

Officer Lee then gave Thomas a marked $20 bill and observed Thomas cross the street, go up to the defendant and engage him in a conversation. Their hands met briefly. Immediately thereafter, the informer returned to the police car and handed the officer a "paper" containing heroin. Thomas

was not searched to ascertain whether or not he still had a portion of the $20 bill.

Defendant testified that on July 6, 1958, he saw the informer, Clarence Thomas, only once while he was standing across the street from the Booker T. Washington Hotel. The defendant testified that he was waiting in a parking lot when Thomas emerged from a black Volkswagen automobile, and came across the street to speak to him. After a brief conversation, Thomas left and proceeded to the Rainbow Café. Defendant admitted their hands had met but said this was only a friendly greeting slap.

About 4:30 p.m. on the afternoon of July 29, 1958, Officer Arrieta and two federal narcotics agents, Louis Raugi and John Lee searched an informer named Norwood Poindexter in the Federal Building. They ascertained that Poindexter did not have any narcotics in his possession, outfitted him with the transmitting portion of a Schmidt device (a sending and receiving apparatus) and supplied him with three $20 bills, the serial numbers of which had been recorded. The three officers and the informer drove an unmarked police vehicle to the corner of Pine and Laguna Streets in San Francisco. Agent Raugi and the informer entered the Richbrook Hotel at 1557 Laguna Street. Agent Raugi testified that he saw Poindexter enter the defendant's room and remain for 5 or 10 minutes. Thereafter, the agent watched Poindexter leave the defendant's room and then return to the police car where the informer handed Agent Lee two bindles of heroin. Poindexter was searched again and no narcotics or money were found.

Officer Arrieta testified that during the entire time, he had remained in the police car and had listened on the receiving portion of the Schmidt device. He testified he heard Poindexter say, "Hi, Tony, do you have the stuff?" Then a voice which he subsequently identified as the defendant's answered: "Yes, I have, I have got it here." He then heard Poindexter count out, "Twenty-Forty-Sixty" and heard the defendant say, "That is correct." Poindexter then asked the defendant if he could get more stuff for that evening and the defendant replied: "Yes, I will try to get the stuff. I will meet you about 9:00 o'clock." It was uncontroverted that before this time, Officer Arrieta had never met the defendant or heard his voice.

On the evening of July 29, 1958, Officer Arrieta and Agents Raugi and Lee again searched the informer, Poindexter,

determined he did not have any narcotics in his possession, outfitted him with the transmitting portion of the Schmidt device, and gave him $180. They returned to Pine and Laguna Streets. Officer Raugi and the informer again entered the Richbrook Hotel. Officer Raugi testified he òbserved the defendant waiting in the doorway to his room and overheard the defendant greeting Poindexter. Poindexter explained that he had been delayed because the money did not arrive on time. A few minutes later, the defendant left the room and got into a taxicab. He returned to the hotel in a cab 10 or 15 minutes later. A few minutes after the defendant had returned, the informer left the room and returned to the police car with Agent Raugi. At this time, the informer turned a balloon of heroin over to Officer Lee. The informer was searched and found to have $140 of the $180 which had been previously given to him.

Officer Arrieta testified that he watched the defendant leave and return in the cab and again heard a conversation over the receiving portion of the Schmidt device. He testified he heard the defendant say: ''I promised you I would have spoons but I only have this one spoon which is pretty good, and I would let you have that for $40. . . . If you give me some more money, I will go out and get the rest of the stuff.'' The informer then said: ''My people don't want you to take the money. I will hold the money until you go out and get the stuff, and when you get back, I will pay you for it.'' During the defendant's absence, the officers overheard the informer and another party discussing music. Upon his return, the officer heard the defendant tell the informer he could not obtain the stuff but would see him the next day.

The defendant testified that on the afternoon of July 29, he was living in room 18 of the Richbrook Hotel. He said he had returned to his room at about 4:30 p.m. with one Garfield Richmond. On returning from taking a shower, which was located at the end of the hall, he met Poindexter, whom he had known for some time, and then spoke briefly with him in the hall. He testified that Poindexter never entered his room and that shortly thereafter, he and Richmond left the hotel room and that he did not return to his room until about 2 a.m. on July 30. Another officer testified that after the defendant's arrest, he had a conversation with the defendant concerning the sale of July 6. The defendant on being asked, said he would reveal his source of narcotics and signed a statement admitting he had bought some narcotics. At the trial, the

defendant denied this, testifying that the statement had been signed under duress and reiterated the denial of his participation in all of the above transactions.

In the light of the above evidence, there can be no question that there is ample evidence to support the verdict. ▮ The next argument is that the trial court erred in failing to require the People to produce the informer, Poindexter. The defendant called a probation officer to show that the informer was an unreliable person. The court advised the defendant that since the informer had not been called as a witness, his reliability was not material. The district attorney then stated that Poindexter would not be called on behalf of the People as a witness. The defendant then stated to the court: "Your Honor, I demand that they bring in the informer Poindexter." His argument is that since his own testimony controverted that of the police officer as to his participation in the transactions of July 29, Poindexter was a material witness, whom he wanted to cross-examine to substantiate his own denial of the charges against him. He argues that the refusal to compel the People to produce Poindexter as a witness operated to deny him a fair trial in the same manner as if he had never been allowed to learn the name of the informer in the first instance. We cannot agree.

▮ There is no requirement in either the federal or state constitutions that all the witnesses or persons who may have knowledge of the crime be produced in court or called to testify. (*People* v. *McCrasky,* 149 Cal.App.2d 630, 635 [309 P.2d 115].) · ▮ The prosecution is not required to call any particular witness nor to put on all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord to the defendant a fair trial. (*People* v. *Kiihoa,* 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673]; *People* v. *Tuthill,* 31 Cal.2d 92 [187 P.2d 16]; *People* v. *Parry,* 105 Cal.App.2d 319 [232 P.2d 899].) ▮ The burden placed on the prosecution is that of disclosure, rather than discovery. (*People* v. *McShann,* 177 Cal.App.2d 195, 198 [2 Cal.Rptr. 71].) *People* v. *Alexander,* 168 Cal.App.2d 753 [336 P.2d 565], pointed out that a rule requiring the prosecution to locate and produce the informer as a witness in every case would be an unreasonable extension of the informer doctrine.

▮ In *People* v. *Kiihoa,* 53 Cal.2d 748, our Supreme Court said at page 752 [3 Cal.Rptr. 1, 349 P.2d 673]:

"The intentional suppression of material evidence by the

state would, of course, be a denial of a fair trial and due process. This could, in some circumstances, be manifest by a failure of the prosecution to call certain witnesses. (*Curtis* v. *Rives*, 123 F.2d 936, 938 [75 App. D.C. 66]; *cf. Mooney* v. *Holohan*, 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406].)   ▮   Such a denial would likewise exist where the prosecution was allowed to control the course of proceedings in a manner which would prevent the accused from presenting material evidence. The rule requiring the disclosure of the identity of an alleged informer is designed to prevent such injustices.   ▮   The rationale of that rule is that the defendant, through the testimony of the informer when his identity is made known, might be able to rebut a material element of the prosecution's case and thereby prove his innocence. The denial by the prosecution of an opportunity for the defendant to seek out the informer and to defend by these means, where the testimony of the informer would be material to the issues, is unfair and oppressive to the defendant, and deprives him of due process of law. (See *Rovario* v. *United States*, 353 U.S. 53, 63-64 [77 S.Ct. 623, 1 L.Ed.2d 639]; *People* v. *McShann*, *supra*, 50 Cal.2d 802, 809, 810 [330 P.2d 33].)''

In the Kiihoa case, the court held that a fair trial had not been had because the state had been allowed to withhold prosecution of the defendant during such time as a material witness might be available, and proceeded to trial only when it was thought that the witness was out of the jurisdiction and unavailable to testify. The defendant had denied knowing the alleged informant, thus putting in issue the credibility of the chief prosecution witness, and it was uncontroverted that the defendant was released after the first arrest in order to avoid the necessity of identifying the informer. The court was careful to point out (at 757) that it was not holding that the mere unavailability of a material witness would necessarily result in a denial of due process in every case.

▮   In the instant case, the defendant testified that he knew both of the informers very well and admitted seeing them on the particular days in question. The record indicates that the defendant had subpoenaed Poindexter but there is no direct testimony that he had been unable to serve the subpoena and not even a suggestion that the police had any knowledge of Poindexter's whereabouts. Nor did the defendant avail himself of his opportunity to ask for a continuance to permit him to further look for the informer once he discovered that the prosecution was not going to call Poindexter as a witness. (*People* v. *McShann*, 177 Cal.App.2d 195, 199-

200 [2 Cal.Rptr. 71]; *People* v. *Scott*, 170 Cal.App.2d 446, 454 [339 P.2d 162].) In the McShann case, *supra*, we held that the playing of a recording of conversations between the defendant and the informer to whom the narcotics had been sold, was not a violation of defendant's right of confrontation, which is somewhat parallel to Officer Arrieta's testimony about the conversations he overheard on the Schmidt device. In the instant case, a number of police officers either saw or heard the defendant participate in each of the transactions charged. As pointed out above, the defendant admitted being present at two of the transactions; he offered no evidence to substantiate his alibi of having been away from the hotel on the evening of July 29. Defendant's argument here asks us to presume that the police officers committed perjury and that the trial court was not alert to detect it. This we cannot do. (*People* v. *Prewitt*, 52 Cal.2d 330, 338 [341 P.2d 1].)

We cannot say on the record before us that a fair presentation of the material evidence in the prosecution of the counts relating to July 29, was not made to the trial court. (*People* v. *Smith*, 174 Cal.App.2d 129 [344 P.2d 435].) As said in *People* v. *Kiihoa*, 53 Cal.2d 748, 754 [3 Cal.Rptr. 1, 349 P.2d 673], the basic issue lies in a balance of the public interest in protecting the flow of information against the individual's right to prepare his defense. In the present circumstances, in the absence of any evidence that the defendant was hindered in his defense or an unfair presentation of evidence at the trial, the issue must be resolved against the defendant.

Judgment affirmed.

Draper, J., and Stone, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 20, 1960.

---

*Assigned by Chairman of Judicial Council.