15 Cal.Rptr. 533]

[Crim. No. 7373. Second Dist., Div. Two. Aug. 18, 1961.]

THE PEOPLE, Respondent, v. CHARLES BLAIR, Appellant.

Charles Blair, in pro. per., and Elinor Chandler for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, Norman H. Sokolow and Edmond B. Mamer, Deputy Attorneys General, for Respondent.

FOX, P. J.—Defendant was indicted by the grand jury of Los Angeles County for the crime of selling marijuana (Health and Saf. Code, § 11531). The offense was alleged to have been committed on November 13, 1959. It was also alleged that defendant had suffered two prior felony convictions, for each of which he had served a term of imprisonment.

On December 23d the indictment was amended on motion of the district attorney, and over the defendant's objection, to state his true name as Charles Blair instead of Clarence Blair.

The jury found the defendant guilty. It also found that he had previously been convicted of the two felonies charged in the indictment.

Defendant's motion for a new trial was denied, probation was denied, and he was sentenced to imprisonment in the state prison. Defendant has appealed from the judgment and from the order denying his motion for a new trial.

In the afternoon of November 13, 1959, Officer Tusan,

assigned to the Narcotics Division of the Los Angeles Police Department, was riding with Ernest Hammond, an informer, who worked with him. At approximately 2:55 that afternoon they drove past the southwest corner of 5th and Crocker Streets. Hammond called to the defendant, who was standing near the corner. The officer parked his car a short distance down the street. In a few minutes defendant and another man, identified only by the nickname of "Blood," came up to the car and entered the back seat. Hammond asked the defendant "if he was ready to go. The defendant stated he was." Blood told the officer to drive to 23d and San Pedro Streets. As he drove toward that location, defendant inquired of Tusan how many "joints" (marijuana cigarettes) he wanted to buy. The officer said he wanted to buy 15. Defendant then "told Blood to get 15 marijuana cigarettes." Tusan gave Blood $7.50, the "going rate" at that time being 50 cents apiece. At this point Blood left the automobile and walked down an alley. While Tusan, Hammond and defendant waited for Blood to return, they discussed the defendant's life, his previous record, his recently getting out of the penitentiary, and where he was living. During the course of this conversation the officer got the impression from a remark made by Hammond that the defendant's given name was Clarence.[1] When Blood returned he entered the car and occupied the right, rear seat. Tusan immediately proceeded to return defendant and Blood to 5th and Crocker Streets, where he had picked them up. A few minutes after reentering the car Blood leaned forward and dropped a package of marijuana cigarettes, secured by a rubber band, onto the front seat of the car. Blood made the comment that he wanted Tusan "to stash them somewhere . . . because he didn't want the police to stop" his car "and find the marijuana cigarettes in the car." Prior to leaving the car, defendant pointed to a dark 1949 Chevrolet four-door, License Number LEX 199, stating that it was the car he was driving. Defendant also stated that he lived at 725 East 25th Street, which was approximately one block from where they had stopped the car to let Blood out to obtain the marijuana cigarettes.

Officer Tusan placed his initials on each of the cigarettes and turned them over to the Property Division for safekeeping and chemical analysis.

Officer Tusan stated that he testified before the grand jury

---

[1]Hammond referred to the defendant as "Clarence-the-lawyer-Blair."

relative to his dealings with various persons in connection with the purchase of contraband; that as a result a secret indictment was returned naming a number of defendants. Subsequently, there was a roundup of suspected narcotic sellers and pushers in the Los Angeles County area, and the defendant was one of the persons thus picked up. Tusan further stated that when he testified before the grand jury he thought the defendant's name was Clarence Blair, but that upon interrogation, after he was taken into custody, he learned from him that his name was Charles Blair.

An expert in fingerprint identification testified that in his opinion the fingerprints of the defendant were the same as those appearing on the certificates of conviction from both Missouri and California. He also testified that defendant "stated that he had priors but that he was going to have a jury trial and he was going to let the jury decide whether he was guilty."

A tape recording was made of the interview the officers had with the defendant. This tape recording, however, was erased on February 22, 1960, in response to "a request from Electronics to erase the tapes so that they could be used again," because the department was "short of tapes." The erasure was in the ordinary course of business and in connection with the erasure of eight or ten other tapes which were erased for reuse. These erasures were pursuant to an authorization signed by a sergeant of the police department.

On the witness stand defendant disclaimed any knowledge of the transaction here in question. He stated that he was arrested on December 19th or 20th, and that the first time he ever saw Officer Tusan was on December 22d, in the city jail, some nine days after the commission of the alleged offense. Defendant denied knowing anyone by the name of "Blood" and also denied knowing Ernest Hammond, who was with Officer Tusan and who assertedly called to defendant while he was standing near the corner of 5th and Crocker Streets on the afternoon of December 13, 1959. Defendant further testified that his landlady, Mrs. Hattie Foster, had a dark 1949 Chevrolet four-door, which she let him use every day for his work. He admitted his two prior convictions. Hattie Foster testified that she owned a 1949 Chevrolet four-door that was dark in color; that the license number was LEX 199, and that defendant lived at her place, 725 East 25th Street.

On rebuttal, Officer Tusan testified that in his conversation with defendant he stated that he lived at 725 East 25th Street;

that he drove a '49 Chevrolet sedan, dark in color, License Number LEX 199, registered to Hattie Foster who lived at the same address where he was living, and that he had recently gotten out of prison.

██ Defendant's first contention is that the grand jury indictment was improperly amended over his objection to identify the defendant as *Charles* Blair rather than *Clarence* Blair. This type of situation is provided for by Penal Code section 953.[2] Thus, when a person is indicted by the wrong name and gives his true name during the course of the proceedings, there is no error in correcting the indictment. (*People* v. *Jim Ti*, 32 Cal. 60, 64.) It is therefore abundantly clear that the amendment of the indictment so as to state the defendant's name correctly was entirely proper.

██ Defendant argues that he was not sufficiently identified before the grand jury and that he was not the person who was indicted. The evidence herein recited is ample to identify defendant as the person who participated in, was indicted for, and was convicted of selling marijuana cigarettes to Officer Tusan. In the officer's testimony before the grand jury he used what he believed to be defendant's correct given name. Upon interviewing defendant he learned he was in error. Hence the amendment of the indictment to state his true given name. There is no question but that defendant was sufficiently identified before the grand jury.

██ Defendant complains that he was not represented by counsel when the indictment was amended to show his true name. Defendant did, however, object to the amendment. But it is clear that defendant was not prejudiced in view of the provisions of Penal Code, section 953. ██ The statement of the court in *People* v. *Crooker*, 47 Cal.2d 348, at page 353 [303 P.2d 753], is apposite on this point: "To constitute deprivation of due process, however, the denial of the right of the accused to be represented by counsel in every stage of the proceedings must have so fatally infected the regularity of his trial and conviction as to violate the fundamental aspects of fairness and result in a miscarriage of justice. [Citations.]" (See to the same effect *Crooker* v. *California*, 357 U.S. 433, 439 [78 S.Ct. 1287, 2 L.Ed.2d 1448]; *People* v.

---

[2]Penal Code, § 953, reads: "When a defendant is charged by a fictitious or erroneous name, and in any stage of the proceedings his true name is discovered, it must be inserted in the subsequent proceedings, referring to the fact of his being charged by the name mentioned in the accusatory pleading."

*Guarino,* 132 Cal.App.2d 554, 557-558 [282 P.2d 538] ; *Lisenba* v. *California,* 314 U.S. 219, 236 [62 S.Ct. 280, 86 L.Ed. 166].)

Defendant intimates that he was without counsel at the time of arraignment. The record does not support his position. The clerk's transcript discloses that he was represented by the public defender at the time of arraignment and plea.

Defendant also argues that the trial court did not have jurisdiction because of (1) uncertainty due to the change of name in the indictment; and (2) lack of probable cause. The evidence to which we have just referred and Penal Code, section 953, *supra,* dispose of the argument on the ground of uncertainty due to the amendment of the indictment by inserting defendant's true, given name, *Charles,* in place of the erroneous name Clarence. There is no basis for arguing lack of probable cause since the evidence accepted by the jury shows that defendant participated in the arrangements for the procurement of the marijuana cigarettes for Officer Tusan.

■ Defendant argues that the indictment was defective on the theory that it was "Blood" who made the sale of the marijuana cigarettes. The evidence, however, discloses that defendant asked the officer how many cigarettes he wanted to buy, and that defendant then told Blood to get 15. Penal Code, section 31, in material part, provides: "All persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission . . . are principals in any crime so committed." It is apparent that defendant may properly be charged as a principal in view of the above testimony. The indictment, therefore, properly charged defendant with violating section 11531, Health and Safety Code.

■ Defendant complains that his motion to strike the indictment was denied without a hearing. The record does not support his position. It reveals that his motion was "argued and denied." He makes a similar complaint with respect to the denial of his motion to dismiss. The clerk's transcript also shows that this motion was "argued." ■ He further complains that his motion under section 995, Penal Code, was denied. This motion appears to have been based on the theory that there was a lack of probable cause to indict defendant. In view of the officer's testimony relative to the purchase of the 15 cigarettes, there was no basis for defendant's claim of lack of probable cause.

■ Defendant argues that the People suppressed the tape recording of the interview the officers had with him after

his arrest; that this interfered with the preparation of his defense, and prevented him from having a fair trial.

The intentional suppression of material evidence by the State would, of course, be a denial of a fair trial and due process. (*People* v. *Kiihoa*, 53 Cal.2d 748, 752 [3 Cal.Rptr. 1, 349 P.2d 673].) But the erasure of the tape here in question does not appear to have been done intentionally for the suppression of evidence. The testimony shows that the department was short of tapes and ordered eight or ten tapes erased so that they might be available for reuse. This was done in the usual course of business and pursuant to instructions from a superior officer. After hearing the entire matter explored, the trier of fact impliedly came to the conclusion that erasing the tapes was done in good faith and not for the purpose of suppressing material evidence. The evidence sustains such an implied finding. Clearly, the erasure of the tape did not prevent the defendant from having a fair trial.

 Defendant contends that the identity of the person in the car with Officer Tusan on the afternoon of December 13, 1959, when the alleged offense took place, was not revealed but in fact suppressed, and that he was prejudiced thereby. Again the record does not sustain defendant's position. On the contrary, Officer Tusan was asked this question: "Who was this other person that was with you?" He replied: "His name is Ernest Hammond." In *Mitchell* v. *Superior Court*, 50 Cal.2d 827, 830 [330 P.2d 48], the court stated: "It cannot be presumed that the superior court will . . . fail to grant a continuance if it is necessary to enable defendants to locate and interview the informers in the preparation of their defense." The rationale of this rule is that the defendant should have a reasonable opportunity to locate, interview and bring into court the informer if his testimony would be of any assistance to the defendant in rebutting a material element of the prosecution's case and thereby assist the defendant in establishing his innocence. (*People* v. *Kiihoa*, *supra*.)

 There is no indication that the defendant was surprised to learn the identity of the informer.[3] If he in fact

---

[3]Defendant states in his opening brief (p. 130, line 5): "The records reveals that defendant subpoenaed said informer before trial. . . ." Officer Tusan testified that "he [Hammond] was subpoenaed to appear to testify in this case, but if I remember correctly, the last time that the case was continued the Judge made the statement that he could not guarantee that this person Ernest Hammond would be available to testify

did not know who the informer was he should have asked for a continuance, and, as indicated in the *Mitchell* case, it cannot be presumed that the trial court would have failed to grant such a continuance. It is therefore apparent that the People were not guilty of any dereliction of duty in connection with the disclosure of the informer's name and that defendant is in no position to complain about his absence from the trial.

Defendant contends that perjured testimony was knowingly used by the prosecution in order to bring about his conviction. The record does not sustain such a charge. The observation of the court in *People* v. *Render,* 181 Cal.App. 2d 190 [5 Cal.Rptr. 236], is a complete answer to defendant's position. The court stated (p. 197): "Defendant's argument here asks us to presume that the police officers committed perjury and that the trial court was not alert to detect it. This we cannot do."

Defendant argues that the evidence of his prior convictions was improperly received because those crimes were unrelated to the offense for which he was indicted, and that the sole purpose of such evidence was to prejudice the jury. The law is clear that a prior conviction need not be related to the crime charged. (*People* v. *Stoddard,* 85 Cal. App.2d 130, 138 [192 P.2d 472].) It was proper to interrogate defendant relative to his alleged prior convictions (1) because he had placed the alleged priors in issue by denying them, and (2) because once a defendant takes the stand he may properly be impeached by asking him whether he has been convicted of a felony. (*People* v. *Guarino, supra,* p. 559.)

Defendant makes numerous complaints that the prosecutor assumed facts not in evidence relative to his credibility, and made improper remarks in his argument to the jury. With the exception of two instances, no objections were made to the statements of the district attorney. None of them were of a serious character and it is plain that a timely objection and admonition to the jury would have obviated any impropriety in any of the prosecution's comments. Having failed to make timely objection and request, defendant may not raise the question for the first time on appeal. (*People* v. *Wein,* 50 Cal.2d 383, 396 [326 P.2d 457]; *People* v. *Hampton,* 47 Cal.2d 239, 240-241 [302 P.2d 300].)

---

because it had been continued so many times." His testimony, however, did not indicate by whom Hammond had been subpoenaed. He also testified that the last time he talked to Hammond "was either in this courtroom, Department 113, or 101."

As to one of the remarks to which objection was made, the jury was properly admonished to disregard it. As to the other, an objection was started, but not concluded.

Defendant complains that the court erred in refusing to give certain instructions requested by him and in giving certain other instructions. We have examined the instructions given, and those refused, and find no merit in these complaints.[4] It was unnecessary to give certain of defendant's proposed instructions because the court adequately covered the particular principles in instructions that were given. Still other proposed instructions were not appropriate under the evidence.

Defendant contends that the record on appeal is inadequate. He complains of the absence of arguments to the jury of counsel on both sides. Again the record does not sustain his position, for the reporter's transcript does in fact contain the arguments of counsel.

As to the other portions of the record which defendant says he should have, there is no showing whatever that any of the matters therein contained relate to any meritorious argument on appeal.[5]

Finally, defendant contends that he was denied his constitutional rights on appeal by reason of the failure of this court to appoint counsel to represent him. In denying defendant's application for appointment of counsel to represent him on appeal this court stated that it had made an independent investigation of the record and had determined that

---

[4]Defendant complains that he was prejudiced by the giving of instructions dealing with confessions and admissions. He argues that there is no evidence showing either. He overlooks, however, the testimony of Mr. Becker, who took his fingerprints and compared them with the prints on the certificates of his prior convictions. Becker testified that ''he said that he was guilty. His exact words were that he was guilty, but he was going to let the jury decide.'' It is therefore apparent that it was entirely proper for the court to instruct on the matter of confessions and admissions.

[5]There is no point in having the portions of the proceedings written up and made a part of the record on appeal which relate to amendment of the indictment so as to show defendant's true name; that his arraignment was continued; that his plea was continued, and that a plea of not guilty was later entered by the court on behalf of defendant; that there were various substitutions of attorneys, and continuances, and transfers from one department of the criminal courts to another.

Defendant also argues that the transcript of the grand jury proceedings which resulted in his indictment should have been made a part of the record on appeal. His theory is that it would disclose that the prosecution knowingly used perjured testimony. There is in the file in this court what purports to be a copy of the grand jury's proceedings which, apparently, was furnished by defendant. It fails, however, to support defendant's theory.

"it would be neither advantageous to the defendant nor helpful to this court to have counsel appointed." This procedure is in harmony with that approved by the Supreme Court in *People* v. *Hyde*, 51 Cal.2d 152, 154 [331 P.2d 42]. This court, however, did extend defendant's time within which to file his opening brief for a period of 45 days.[6]

Further review of this case has demonstrated that defendant was not deprived of any constitutional right by the failure of this court to appoint counsel for him on appeal. Furthermore, defendant had private counsel represent him at the hearing on his appeal in this court.

The record discloses that defendant had a fair trial and that the evidence amply supports the verdict rendered by the jury and justifies the judgment pronounced by the trial court. We find no basis whatever for a reversal.

The judgment and the order are affirmed.

Ashburn, J., and Herndon, J., concurred.

A petition for a rehearing was denied September 1, 1961, and appellant's petition for a hearing by the Supreme Court was denied October 11, 1961.

---

[6]Defendant's opening brief consists of 146 pages, and his reply brief covers 41 pages. In these documents he has explored and reexplored every facet of his case. His treatment of each point is comprehensive. He has cited innumerable authorities, from many of which he has quoted. He has also quoted extensively from the reporter's transcript. His briefs indicate that he has either had unusual exposure to the law or that he has had the assistance of someone with a background of experience in the law. His case has been thoroughly presented in his briefs on file.