[Crim. No. 7732. Second Dist., Div. Three. Dec. 6, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES WADE GOLDSMITH, Defendant and Appellant.

James Wade Goldsmith, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Plaintiff and Respondent.

THE COURT.—In a jury trial in which he was represented by the public defender, James Wade Goldsmith was convicted of armed robbery. His motion for a new trial was denied. Before judgment was pronounced, and at the suggestion of the public defender that defendant might not be sane, the court appointed two experts to examine defendant and report as to his present sanity. The examination was had and defendant was reported to be sane and was found by the court to be presently sane. Probation was denied and defendant was sentenced to state prison. He appeals from the judgment in propria persona. He applied for appointment of counsel on the appeal; being convinced from reading the record that there is no merit in the appeal, the application was denied. Defendant was notified and given time to file a brief, which he has done.

There was evidence of the following. The jewelry store of Vincent Canzone at 6904 South Huntington Boulevard, in Huntington Park, was robbed at about 1:50 p. m. by a man whose face was masked with a stocking, fastened to a red, white and gray cap and taped to his chin. A young man was in the store inspecting watches. The robber held a gun on Canzone, ordered the customer to close the door and threatened to kill him if he left. He then ordered the customer to put diamonds, watches and jewelry in a paper sack; the customer complied, putting in five trays of rings. The robber took $84 in a money bag from the safe and a bag of jewelry

and went into a rear room, accompanied by Canzone and the customer. The robber lifted the stocking from his face, removed his cap and ran out the rear door into an alley. In a police lineup and at the trial, Canzone identified defendant as the robber.

Madeleine Steinbrook was employed at Republican Headquarters at 7024 South Huntington Boulevard. She testified that at about 2 p. m. on the date of the robbery Goldsmith came into the headquarters and engaged her in conversation. He went behind the counter, reached down under it, remained about 15 minutes and left. Mrs. Steinbrook then discovered a cap that had been shoved back onto a shelf. Dorothy Horen, who also worked at the headquarters, testified that she saw defendant when he came in about 2 p. m. She identified him as the man who was talking with Mrs. Steinbrook. Freda May Malm also testified. She went to work at the headquarters at about 5:15 p. m. She found the cap on the shelf. She pulled out a paper sack and from it a jeweler's case containing two rings. She retained them, and later gave them to an officer. At about 6 p. m. defendant came in. He stood at the end of the counter near the paper sack. He took the sack, saying that it belonged to him, and carried it away.

Paul Malm testified that he was on duty at the headquarters about 6 p. m. He saw defendant come in, and talked politics with him. On the following day defendant was arrested by Officer Jacobson at the Republican Headquarters. The officer was aware of the robbery. He had been given the case, the rings and the cap. Defendant was pointed out to him by Mr. Malm. After he arrested defendant he asked and was given permission to search defendant's car, which was parked nearby. In the car the officer found a blue tag. The two rings found by Mrs. Malm, the cap, the jeweler's case and the tag were introduced in evidence. The rings were identified by Mr. Canzone as valuable rings that had been stolen, the jeweler's case was his, the tag was identified by his own handwriting as having been attached to one of the rings. The cap, like the cap that was worn by the robber, had part of a stocking attached to it and pieces of tape. Defendant was positively identified by Mrs. Steinbrook, Dorothy Horen and Mr. and Mrs. Malm.

Defendant testified that he had been at Republican Headquarters about 6 p. m. on December 23d but not earlier than that; he had never been in the jewelry store. During the afternoon of the 23d he had been in a garage several miles

away. In the headquarters he had seen Mrs. Malm and had been at the counter. He had some articles in a brown paper bag, which he left on the counter when he went out, but came back at once to retrieve it. Roy G. McCleary, the customer who was in the jewelry store, testified to the robbery but could not identify defendant. He did not see him with his face uncovered. A garage man testified that at the time of the robbery, defendant was in his shop some miles away. He did $14 worth of work on his car but made no record of the work. Officer Jacobson, recalled, stated that he had interviewed the mechanic who stated that defendant could have been in the shop as late as 2:30 p. m.

 Defendant argues that the case should have been dismissed because of delay in arraignment, after his arrest. The point is not well taken for the reason that it is not shown that the delay deprived him of a fair trial. (*People* v. *Guarino,* 132 Cal.App.2d 554 [282 P.2d 538].)

 It is contended that the court improperly denied a continuance in order that defendant have time to produce one Hester as a witness. Defendant had been granted two continuances. Notwithstanding the denial of a further continuance Hester appeared and was sworn as a witness. There was on file a report of Hester's physician showing that he had recently been operated on for a condition of the brain. The court examined the report and conducted a conference with counsel which was unreported, following which Hester was excused by defense counsel and the court. It will not be presumed that the witness was excused without good reason.

Defendant's contention that he was not properly represented during the trial is not borne out by the record. He received able and conscientious assistance at the hands of the deputy public defender.

 The contention that the verdict was based upon insufficient evidence is clearly unsupportable.

The identification of defendant by Canzone as the robber and by the other witnesses as the man who left the paper sack, the jeweler's case, the cap and the rings at Republican Headquarters, and the discovery of the jeweler's tag in defendant's car were overwhelming evidence of defendant's guilt.

 It was charged in the information that defendant was armed with a deadly weapon, "to wit, a .38 caliber snub nose pistol." Defendant claims the offense of robbery was not proved to be of the first degree (Pen. Code, § 211a), be-

cause no weapon was produced at the trial. There is nothing to the point. The weapon was not recovered. It was sufficiently identified as a revolver or a pistol. It was used in the perpetration of the robbery by putting Canzone in fear and as a means for the prevention of the departure of the customer who was threatened with death if he left the store. ▬ Under section 211a of the Penal Code, a robbery is of the first degree if it is perpetrated by one who is armed with a dangerous or deadly weapon. The gun described by the witnesses was at least a dangerous weapon.

The judgment is affirmed.