Defendant was convicted of two counts of selling heroin (§ 11501, Health Saf. Code) and a third count with codefendant Mendoza. He appeals from judgment of conviction.
In May 1964, Officer Foresta, Narcotics Division, was introduced by his superior officer to Dave; he did not then know Dave's address or his last name. Later meetings with Dave were always prearranged. Subsequently he learned "his possible full name" to be David Rodriguez; the officer described him as "a male Mexican, approximately 28, five eleven, 150, black hair, brown eyes."
Around 4:15 p.m. on June 15, 1964, in an unmarked police vehicle, Foresta, an undercover narcotics officer, accompanied by Dave, drove to Garrett and Blanchard Streets where Dave pointed out defendant who was standing on the corner; they stopped within 5 or 6 feet of defendant and Dave motioned for him to come over next to the passenger side; Dave asked defendant if he had any "smack" [heroin]; defendant said he did but that he had it loose and would have to cap it, and to return in 20 minutes. The officer waited in the vicinity for approximately 45 minutes, saw defendant on a nearby street corner, approached him and asked him if he had the "smack"; defendant replied affirmatively and asked the officer for money; the officer gave him $10 for which he received from defendant four capsules of heroin. *Page 602 
During the next several weeks the officer saw defendant several times and even talked with him briefly. On June 24, 1964, around 1:30 p.m., again in the company of Dave, he met defendant at the corner of Herbert and Hummel Streets; Dave asked defendant if he had any "smack"; defendant said he didn't, but could get some and asked how much the officer wanted; told a half a gram, defendant said he knew where he could get it. Dave got out of the vehicle and defendant got in; defendant directed the officer to Whittier and Arizona Streets and told him to park, asked for the money, which the officer gave him ($10), got out of the car, walked a short distance and approached Mendoza; defendant and Mendoza had a short conversation and walked back to and got in the officer's vehicle; defendant told him that Mendoza would get the "smack"; Mendoza directed the officer to another area, told him to wait in the car, asked for the money which defendant handed to him ($10), departed, returned 20 minutes later, got into the vehicle and handed defendant a newspaper bindle containing three capsules of heroin; defendant gave the officer the bindle; the officer returned Mendoza and defendant to their respective locations.
On July 3, 1964, around 12 o'clock noon, Officer Foresta saw defendant at Hummel and Gage and asked him if he had any "smack"; defendant said he did not but he could get some on Arizona Street; defendant got into the car and directed him and asked him how much he wanted; the officer said half a gram; defendant asked for the money and the officer gave him $10; defendant departed and returned in about 10 minutes; he said he had not been able to get a full half gram but did obtain three capsules which he gave to the officer with two one-dollar bills.
Appellant testified that he did not recall where he had been on June 15, 1964, remembered being in Long Beach with three others on June 24, 1964, and on July 3, 1964, worked all day in the family's photographic studio; he denied ever seeing Officer Foresta prior to the arrest, and selling narcotics. Defendant's father, mother and older brother testified that on July 3, 1964, defendant worked the entire day at the studio; his mother testified that he also worked in the studio on June 15 and June 24, 1964.
[1] Appellant contends that the People's failure to produce the informer constituted a violation of his right of confrontation and due process; there was suppression of evidence and the prosecution is required to divulge the name of *Page 603 
an informer who is a material witness to the case, relying uponPeople v. Williams, 51 Cal.2d 355 [333 P.2d 19], and People
v. Kiihoa, 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673].
It is apparent from the evidence that around the time of the instant transactions, Officer Foresta was engaged as an undercover officer in a narcotics buy program for the police department. One of his informants was Dave; he met him at a meeting arranged by his superior, Sergeant Slagle. Thereafter he used Dave frequently, between 20 and 30 times, during this period and made appointments with him personally from one day to another. Officer Foresta did not know Dave's last name, his telephone number or where he lived or worked, and testified that he made no attempt to find out. Informers have an important function in narcotic investigations; they generally are persons willing to give assistance only if their identities are withheld, and are reluctant to give any information concerning themselves or where they can be located. For their own protection, most of them give only first names, sometimes fictitious, or nicknames, seldom any surnames. Official inquiry into the true identity of an informer often results in his refusal to cooperate. However, sometimes the informant's name and whereabouts are known to the police. Thus, the purpose of the privilege (new Evid. Code, §§ 1040-1042) against disclosure of the identity of these persons furnishing to law enforcement officers information concerning criminal violations is the furtherance of crime detection and the protection of the public interest in effective law enforcement. (Roviaro v. United States, 353 U.S. 53, 59 [1 L.Ed.2d 639, 644, 77 S.Ct. 623].) This is particularly true in narcotic investigations because of the significant increase in violations, the secretive nature of narcotic crimes and the increasing danger to public health caused by the drug traffic.
However, where, as here, the disclosure of identity of an informer is relevant and helpful to the defense or essential to a fair determination of the cause, the privilege cannot be invoked; but even so, the prosecution is under no obligation to produce the informant as a witness. Here disclosure of Dave's identity was relevant and helpful to the defense inasmuch as in two counts he was a participant in the sale of heroin to the officer and a witness to the transactions (People v. Williams, 51 Cal.2d 355, 357-358 [333 P.2d 19]; People v. McShann, 50 Cal.2d 802, 808 [330 P.2d 33]; Roviaro v. United States, *Page 604 353 U.S. 53, 59 [1 L.Ed.2d 639, 644, 77 S.Ct. 623]); and the prosecution fully complied with the request for disclosure by giving all information it had relative to the identity and whereabouts of the informer. Thus it was under no duty to produce him as a witness so as to make him available for cross-examination. (People v. Render, 181 Cal.App.2d 190, 195 [5 Cal.Rptr. 236].) The proscription is only against concealing the informant or suppressing his identity; there is no requirement that he be produced as a witness. (People v.Brooks, 234 Cal.App.2d 662, 678 [44 Cal.Rptr. 661]; People
v. Fontaine, 237 Cal.App.2d 320, 327 [46 Cal.Rptr. 855].) Here the officer was thoroughly cross-examined concerning each transaction. "The prosecution is not required to call any particular witness, nor to put on all the evidence relating to a charge so long as all material evidence bearing thereon is fairly presented in such a manner as to accord to the defendant a fair trial." (People v. Kiihoa, 53 Cal.2d 748, 752 [3 Cal.Rptr. 1,349 P.2d 673].)
Unlike in People v. Williams, 51 Cal.2d 355, [333 P.2d 19], there was here no attempt or intent to avoid disclosure by invoking the "informer's privilege." The People elicited on direct examination of Officer Foresta all of the identification data known by him; he said he knew the informer only as "Dave," in detail described him and gave "his possible full name" as David Rodriguez. Without objection or limitation of any kind, liberal cross-examination was afforded defense counsel who took advantage of the opportunity by examining the officer at length concerning Dave's identification and whereabouts. While the informer's verified family name and address were not known by Officer Foresta, it is clear from the record that the prosecution made available to the defense all of the information known by him; this is sufficient. (People v. Prewitt, 52 Cal.2d 330, 336-337 [341 P.2d 1]; People v. Garcia, 171 Cal.App.2d 757, 760 [341 P.2d 351]; People v. Rodriguez, 180 Cal.App.2d 534, 536 [4 Cal.Rptr. 456]; People v. Escoto, 185 Cal.App.2d 599, 601 [8 Cal.Rptr. 488].) [2] The prosecution's duty to disclose must be limited to pertinent information in its possession (People v. Diaz, 174 Cal.App.2d 799, 802 [345 P.2d 370]; People v. Valencia, 156 Cal.App.2d 337, 342 [319 P.2d 377]); as to its duty to make itself informed, the court said in People v. Render, 181 Cal.App.2d 190. at page 195 [5 Cal.Rptr. 236]: "The burden placed on the prosecution is that of disclosure, rather than discovery. [Citation.] . . . [A] rule requiring the prosecution *Page 605 
to locate and produce the informer as a witness in every case would be an unreasonable extension of the informer doctrine."
Absent from the record is any showing that Officer Foresta deliberately suppressed information concerning the name and whereabouts of the informer. Any assertion to the contrary is without foundation. We assume that Officer Foresta spoke the truth when he testified that he had no further information concerning the informant. (§ 1847, Code Civ. Proc.) Certainly there is no presumption that police officers will commit perjury. (People v. Prewitt, 52 Cal.2d 330, 335 [341 P.2d 1].) Officer Foresta was co-operative during both direct and cross-examination and there appears to be nothing in the record to create any suspicion that he deliberately withheld information. (People v.Blair, 195 Cal.App.2d 1, 9 [15 Cal.Rptr. 533].) The trial judge observed the officer and heard him testify. The credibility of Officer Foresta was for the trial court. (People v.Valencia, 156 Cal.App.2d 337, 342 [319 P.2d 377].)
We assume from appellant's argument that he believed that had Dave been available and sworn as a witness, it is possible that he would have impeached Officer Foresta; and further that it is possible that a "verified" surname would have aided the defense in locating and producing Dave. In dealing with such possibilities the court said in People v. Mays, 174 Cal.App.2d 465
[344 P.2d 840]: "We do not consider that the pyramiding of such possibilities in defendant's behalf was essential to a fair trial. The cited cases do not go so far." (P. 470.)
Finally, appellant contends that the arresting officer's conduct constituted entrapment as a matter of law; such a claim is without merit. The evidence shows that the only question asked of defendant in all three transactions was "if he had any smack," and that on each occasion defendant was ready and willing to supply the narcotic and did so without delay. This, together with defendant's immediate request for money, his ready knowledge of the sources of supply, the going price for heroin and his repeated sales to the officer, are strong indications of a pre-existing illegal design in the mind of defendant. There is here no evidence that Officer Foresta conceived and planned the offense and procured its commission by defendant who would not have perpetrated the crime but for the officer's trickery, persuasion or fraud. (People v. Perez, 62 Cal.2d 769, 775 [44 Cal.Rptr. 326, 401 P.2d 934]; *Page 606 People v. Monteverde, 236 Cal.App.2d 630-639 [46 Cal.Rptr. 206] ; People v. Marsden, 234 Cal.App.2d 796, 798 [44 Cal.Rptr. 728].) Nor is there any showing of seduction of an innocent person into an unlawful act. (People v. Roberts, 40 Cal.2d 483, 489 [254 P.2d 501]; People v. Lindsey, 91 Cal.App.2d 914, 917 [205 P.2d 1114].) But there is evidence that Officer Foresta set in motion certain circumstances which provided an opportunity for the defendant to conduct criminal activities of his own conception. (People v. Benford, 53 Cal.2d 1, 9 [345 P.2d 928]; People v. Caiazza, 61 Cal.App. 505, 509 [215 P. 80]; People v. Estrada, 211 Cal.App.2d 722, 726 [27 Cal.Rptr. 605]; People v. Cordray, 209 Cal.App.2d 425, 432-434 [26 Cal.Rptr. 42].) [3] Where the intent to commit a criminal offense is preformed and pre-existing in the mind of the defendant, simply providing opportunity, suggestion or a fictitious accomplice raises no inference of unlawful entrapment even though law enforcement officers encourage or facilitate the act.
"[W]e conclude that the evidence adequately supports the implied finding of the trial court that the criminal intent incident to the subject offense originated in the mind of the defendant, and that his defense of entrapment was not established as a matter of law. The pre-existence of a criminal intent to sell marijuana reasonably may be inferred from the defendant's knowledge of the sources of supply; his declared intention to buy a pound of marijuana from one of these sources; his concept of a method of delivery which would protect him from getting into trouble; his lack of any expressed reluctance to effect a sale; his knowledge of the going price of a marijuana cigarette; and his possession of and hiding a quantity of marijuana in the desert before the officer solicited the purchase which led to his arrest. Particularly pertinent to the inquiry at hand is the fact that the evidence supports a finding that the officer did not persuade, play upon the sympathies of, threaten, or attempt to coerce the defendant in soliciting the subject sale." (People
v. Estrada, 211 Cal.App.2d 722, 726-727 [27 Cal.Rptr. 605].) The evidence in the case at bar is similar to that shown inEstrada; and there is nothing herein to indicate as a matter of law that there was persuasion beyond the scope of an ordinary transaction between a willing seller and buyer. (People v.Gelardi, 77 Cal.App.2d 467, 476 [175 P.2d 855]; People v.Braddock, 41 Cal.2d 794, 802 [264 P.2d 521].) All of the evidence is consistent with the trial court's finding of a *Page 607 
preconceived criminal intent on the part of the defendant (People v. Roberts, 40 Cal.2d 483, 488-489 [254 P.2d 501]); none points to entrapment of any kind.
The judgment is affirmed.
Wood, P.J., and Fourt, J., concurred.